Of Counsel:
OLIVER, LAU, LAWHN, OGAWA & NAKAMURA
Attorneys at Law
A Law Corporation

JEFFREY DANIEL LAU   2157-0
KURT K. LEONG         5577-0
600 Ocean View Center
707 Richards Street
Honolulu, Hawaii  96813
E-mail: jlau@ollon.com
Telephone:  533-3999
Facsimile:   533-0144

Attorneys for Defendants
FINANCE ENTERPRISES, LTD., et. al.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| N. HARWOOD STREET PARTNERS I, L.P. a Delaware limited partnership,<br><br>Plaintiff,<br><br>vs.<br><br>HIRAM L. FONG, ALSO KNOWN AS HIRAM L. FONG, SR., et al.,<br><br>Defendants. | CIVIL NO. CV-02-00383 HG-BMK<br>(Contract)<br><br>**DEFENDANT FINANCE ENTERPRISES, LTD.'S FIRST SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION BY KAHALA CCM FACTORS, LLC TO SUBSTITUTE FOR PLAINTIFF N. HARWOOD STREET PARTNERS I, L.P., FILED SEPTEMBER 28, 2006**<br><br>**Status Conference:**<br><br>Date:   October 20, 2006<br>Time:   11:00 a.m.<br>Judge:  Hon. Barry M. Kurren |

**DEFENDANT FINANCE ENTERPRISES, LTD.'S FIRST
SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO MOTION
BY KAHALA CCM FACTORS, LLC TO SUBSTITUTE FOR PLAINTIFF
N. HARWOOD STREET PARTNERS I, L.P., FILED SEPTEMBER 28, 2006**

Comes now, Defendant FINANCE ENTERPRISES, LTD. (hereinafter "Defendant FE" or "Finance Enterprises"), and hereby submits its First Supplemental Memorandum in Opposition to the MOTION BY KAHALA CCM FACTORS, LLC TO SUBSTITUTE FOR PLAINTIFF N. HARWOOD STREET PARTNERS I, L.P., filed herein on September 28, 2006.

At the October 10, 2006, hearing on this Motion, the Court ordered additional briefing regarding the issue of disqualification of the law firm of McCorriston Miller Mukai MacKinnon (hereinafter "the McCorriston firm"), as counsel for Movant KAHALA CCM FACTORS, LLC (hereinafter "KAHALA CCM").

In their Reply Memorandum, the McCorriston firm acknowledges that a conflict of interest exists if the interests of FINANCE ENTERPRISES and KAHALA CCM are directly adverse or materially adverse. Upon information and belief, KAHALA CCM and related entities are engaged in a "greenmail" scheme (the practice of an unfriendly company buying enough of a target company's stock to threaten a hostile takeover, with the object of reselling it to the target company at a premium price above market value). Greenmail is a highly

criticized practice. *See, e.g., NOTE: The Hobbs Act and RICO: A Remedy for Greenmail?*, 66 Tex. L. Rev. 647, 648, n. 19, and 650 n. 25 (1988).[1]

Assuming that KAHALA CCM and its related entities are engaged in a greenmail scheme, its interests are directly and materially adverse to the interests of FINANCE ENTERPRISES. By its nature, greenmail is a means by which a corporate raider seeks to profit at the expense of the target corporation. The representation of KAHALA CCM by a law firm that admittedly has represented FINANCE ENTERPRISES in the past, that continues to represent one of its affiliates (Finance Factors, Limited), and that employs a former Director of the corporation, is highly prejudicial to FINANCE ENTERPRISES.

I. **WILLIAM McCORRISTON, ESQ., HAD ACCESS TO CONFIDENTIAL INSIDE INFORMATION DURING THE MAHUKONA PROPERTIES LITIGATION**

The McCorriston firm concedes that it represented FINANCE ENTERPRISES, former Chief Executive Officer (CEO) Wendell Pang, and other related entities in the Mahukona Properties litigation. The attorneys involved in the case included William C. McCorriston.

---

[1] The article cites various authorities criticizing greenmail, including statements that: (1) "Greenmail is nothing more or less than the wealthy investors exploiting a weakness in the law to raid corporate treasuries"; (2) "[T]here is a widespread recognition in the courts today and an even stronger recognition by the public generally, that the practice of greenmail is highly undesirable."; (3) "greenmail hurts stockholders by stifling tender offers and proxy contests and causing stock values to decline"; (4) "nonparticipating shareholders suffer substantial and statistically significant share price declines upon the announcement of targeted repurchases at premiums above market value"). Id., at 648, n. 19, and 650 n. 25.

Although Mr. McCorriston states in his Declaration that he does not recall the details of the case, and that two other attorneys in his firm actively worked on the case, the Circuit Court's on-line docket indicates that Mr. McCorriston made an appearance at a minimum of ten hearings or conferences, including appearing at trial.

The Mahukona lawsuit was a limited partnership dispute in which a number of limited partners sued FINANCE ENTERPRISES, FINANCE FACTORS, LIMITED, FINANCE REALTY, and a number of related entities, generally alleging mismanagement and related claims. During the course of said representation, Mr. McCorriston met on a number of occasions with the CEO, as well as other FINANCE ENTERPRISES personnel, and was privy to inside information regarding the company and its affiliates and subsidiaries, including the decision-making processes, communications and relationships between officers, directors, and other personnel.

## II.    STACY HEE, ESQ. HAD ACCESS TO CONFIDENTIAL INSIDE INFORMATION AS A DIRECTOR OF FINANCE ENTERPRISES

Stacy C.G. Hee, Esq., an attorney in the McCorriston firm, served as a Director of FINANCE ENTERPRISES from 1999 to 2003. As a Director, Ms. Hee would have had access to material inside information regarding the company and its affiliates, including the decision-making processes, communications and relationships between officers, directors, and other personnel, and general policy regarding such matters as litigation and stock transfers.

Ms. Hee acknowledges that she was a Director, but states in her Declaration that she does not recall discussing this lawsuit with any *attorney* for FINANCE ENTERPRISES during her tenure as Director, and that she does not believe that this lawsuit was ever discussed at any Board meeting that she attended.  (She does not indicate whether she discussed this lawsuit with anyone else other than an FE attorney, and does not indicate whether she discussed this lawsuit with anyone other than at a Board meeting).

The fact that Ms. Hee never discussed this particular lawsuit with an FE attorney, and never discussed it during a Board meeting, misses the point.  It is well established that directors have a fiduciary relationship to their corporation.  *See, e.g.,* Hawaiian Int'l. Finances, Inc. v. Pablo, 53 Haw. 149, 153 (1971).  Ms. Hee's fiduciary obligations of loyalty and fidelity to FINANCE ENTERPRISES as a former Director are in conflict with her firm's representation of a party considered adverse and hostile to FINANCE ENTERPRISES.

A similar situation was addressed by the California Court of Appeals in William H. Raley, Co. v. Superior Court, 149 Cal. App. 3d 1042 (1983).  In that case, a law firm sought to represent a lessor in an action on a lease. The lessee was the subsidiary of a bank. An attorney in the law firm sat on the bank's board of directors.  Although the law firm had never represented the parent bank or the subsidiary lessee, the court nevertheless disqualified the law firm.

The Raley court reasoned that a conflict of interest may arise other than in the course of legal representation:

> A conflict of interest . . . may arise from an attorney's relationship with a nonclient.  Such a conflict of interest may arise [1] where an attorney's relationship with a person or entity creates an expectation that the attorney owes a duty of fidelity.  It may also arise [2] where the attorney has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client.

Id., at 1047.

Although the bank and the law firm took steps to seal off the attorney/director from receiving any information about the lawsuit, the Raley court recognized that there could be no assurance that, in the course of casual conversations or meetings of Bank directors, the attorney/director would not obtain confidential information.  Raley also recognized that the bank's board meetings may include discussion of general policies affecting litigation, which policies may have a direct effect on the outcome of the case.  Id., at 1049.

In this case, Ms. Hee has a conflict of interest in that: (1) her relationship with FINANCE ENTERPRISES as a former Director "creates an expectation that the attorney owes a duty of fidelity"; and, (2) Ms. Hee, in the course of her duties as a Director, "has acquired confidential information in the course of such a relationship which will be, or may appear to the person or entity to be, useful in the attorney's representation in an action on behalf of a client." Id., at 1047.  See also, Morrison-Knudsen, infra.

### III. DONALD WONG, ESQ., REPRESENTS FINANCE FACTORS, LIMITED, A SUBSIDIARY OF FINANCE ENTERPRISES

Donald K.O. Wong, Esq., has represented and currently represents

Finance Factors, Limited, in various matters, including collections and foreclosures. (He also acknowledges that he has represented Finance Enterprises).

In their Reply Memorandum, the McCorriston firm argues that representation of a subsidiary does not equate with representation of the parent corporation for conflict purposes, unless the subsidiary and parent are "alter egos" of one another. (See Reply Memorandum at 10-11). However, contrary to their argument, the "alter ego" theory is not the sole standard for determining whether a conflict exists.

The McCorriston firm relies upon a case from the California Court of Appeals, Brooklyn Navy Yard Cogeneration Partners v. Superior Court, 60 Cal. App. 4th 248 (Cal. App. 4th Dist. 1997).

However, the Brooklyn Navy Yard decision was strongly criticized in other cases, including a decision by another California Court of Appeals, Morrison-Knudsen v. Hancock, 69 Cal. App. 4th 223 (Cal. App. 1st Dist. 1999).[2]

The Morrison-Knudsen court pointed out, in rejecting the Brooklyn Navy Yard holding that the an "alter ego" finding is the *sole* standard for determining that a conflict exists, that although Brooklyn Navy Yard purports to rely in part

---

[2] See also, Huston v. Imperial Credit Commer. Mortg. Inv. Corp., 179 F. Supp. 2d 1157 (C.D. Cal. 2001) (noting that prior federal cases and a subsequent California case (Morrison-Knudsen) have rejected the Brooklyn Navy Yard court's strict adherence to the "alter ego" test).

upon a formal ethics opinion of the American Bar Association's Committee on Professional Ethics ("ABA Opinion"), Brooklyn Navy Yard's analysis actually conflicts with the ABA Opinion. Id., at 244. The ABA Opinion expressly provided that "It is not necessary, however, for one corporation to be the alter ego of the other as a matter of law in order for both to be considered clients," and further provided that "alter ego" status was only one factor to consider. Id.

The Morrison-Knudsen court went through a long discussion of the shortcomings of the "alter ego" theory, in concluding that the absence of an alter ego relationship is not dispositive in determining whether a conflict exists. Id., at 244-252. The court concluded that something less than an "alter ego" finding may justify the treatment of corporate affiliates as one entity for conflict purposes, and that a conflict may be found where the corporate affiliates have a *"unity of interests."* Id., at 252.

Under the "unity of interests" test, where corporate affiliates have sufficient unity of interests, they should be treated as the same entity for conflict purposes. Id. Under this test:

> the principal focus should be the *practical consequences* of the attorney's relationship with the corporate family. If that relationship may give the attorney a *significant practical advantage* in a case against an affiliate, then the attorney can be disqualified from taking the case.
>
> Id., at 253 (emphasis added).

In disqualifying the law firm, the Morrison-Knudsen court found among other things that the parent company controlled the legal affairs of the subsidiary, and that the parent and subsidiary had integrated operations and management personnel. FINANCE ENTERPRISES' situation is similar, in that the companies share operations and management personnel, including significantly overlapping directors and the same general counsel.

Other courts have similarly disqualified law firms based on an "identity of interests" between corporate affiliates. In Teradyne, Inc. v. Hewlett-Packard Co., 20 U.S.P.Q.2d 114 (N.D.Cal 1991), the court cited the "degree of connectedness" and the "significant identity of legal interest" between the parent and subsidiary, especially in light of the parent's control and supervision of the subsidiary's legal affairs. In Baxter Diagnostics, Inc. v. AVL Scientific Corp., 798 F. Supp. 612 (C.D. Cal. 1992), the court disqualified the law firm where the parent and subsidiary were "inextricably intertwined," as an injury to one company would "surely flow" to the other.

IV. **CONCLUSION**

As cited by Morrison-Knudsen, *supra*, the "practical consequences" of the McCorriston firm's representation of KAHALA CCM and its related entities would be to give KAHALA CCM and its related entities a "significant practical advantage" in its dealings with FINANCE ENTERPRISES, given the past and

present attorney-client relationships with Mr. McCorriston and Mr. Wong, and the past directorship of Ms. Hee.

In light of the foregoing, FINANCE ENTERPRISES respectfully requests that the Court deny the Motion and enter an Order precluding the McCorriston firm from representing KAHALA CCM and any related entities in this litigation.

Dated:   Honolulu, Hawaii, October 17, 2006.

Of Counsel:
OLIVER, LAU, LAWHN,
  OGAWA & NAKAMURA

/s/ Kurt K. Leong
JEFFREY DANIEL LAU
KURT K. LEONG
Attorneys for Defendant
FINANCE ENTERPRISES