McCORRISTON MILLER MUKAI MacKINNON LLP

ROBERT G. KLEIN          #1192-0
CHRISTOPHER J. COLE      #5781-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii 96813
Telephone No.: 529-7300
Facsimile No.: 524-8293
E-mail: klein@m4law.com/cole@m4law.com

Attorneys for Plaintiff
Kahala CCM Factors, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHALA CCM FACTORS, LLC,<br><br>  Plaintiff,<br><br>vs.<br><br>HIRAM L. FONG, ALSO KNOWN AS<br>HIRAM L. FONG, SR., et al.<br><br>  Defendants. | CIVIL NO. CV-02-00383 SOM/BMK<br>(CONTRACT)<br><br>PLAINTIFF KAHALA CCM<br>FACTORS, LLC'S REPLY<br>MEMORANDUM RE:<br>REPRESENTATION OF<br>PLAINTIFF BY McCORRISTON<br>LAW FIRM; DECLARATION OF<br>CHRISTOPHER J. COLE;<br>EXHIBITS "6"-"7";<br>DECLARATION OF<br>DONALD K. O. WONG;<br>DECLARATION OF<br>BRADLEY E. SMITH;<br>CERTIFICATE OF SERVICE<br><br>Date:   October 20, 2006<br>Time:   11:00 a.m.<br>Mag Judge: Barry M. Kurren |

PLAINTIFF KAHALA CCM FACTORS, LLC'S REPLY MEMORANDUM
RE: REPRESENTATION OF PLAINTIFF BY McCORRISTON LAW FIRM

Plaintiff Kahala CCM Factors, LLC ("Kahala CCM"), respectfully submits this Reply Memorandum ("Reply") in response to Finance Enterprises, Ltd. ("Enterprises") "Supplemental Memorandum in Opposition to Motion by Kahala CCM Factors LLC [Etc.]", filed on October 17, 2006 ("Supplemental Memo").

I.   INTRODUCTION

At the last hearing on October 10, 2006, this Court told Enterprises to provide "very specific" information to support its counsel's assertion that Kahala CCM's attorneys of record have a disqualifying conflict of interest. Contrary to the Court's explicit directions, Enterprises' Supplemental Memo and related submissions provide only vague, self-serving allegations, and nothing of substance beyond what Kahala CCM's attorneys had already disclosed to the Court at the last hearing. Conspicuously absent from Enterprises' papers is any proof to back up the false statements of Jeffrey Lau, Esq. in open court last week about the nature of the law firm's prior representation of Enterprises. At the end of the day, Enterprises' Supplemental Memo confirms that: (1) no direct or material adversity exists; (2) Enterprises is a former client of the firm; and (3) the matters involved in the former representation are unrelated to the present matter. This Court should not disqualify the McCorriston law firm in this matter.

## II. THERE IS NO DIRECT OR MATERIAL ADVERSITY IN THIS CASE

### A. The Posture and Nature of the Existing Litigation is Not Directly Adverse to Finance Enterprises, Ltd.

Enterprises does not dispute the absence of adversity between the parties *in this lawsuit*. Instead, Enterprises focuses on a speculative fear that Kahala CCM will engage in "greenmail". See Memo in Opp., at pp. 2-3. This action is nearly complete, and any disqualification would only cause needless cost and delay. Enterprises is a nominal party joined solely because of its right of first refusal, which is fully preserved in the uncontested judgments entered in this action.

### B. There is no Evidence of an Alleged "Greenmail" Scheme

Enterprises argues, "**Assuming** that Kahala CCM and its related entities are engaged in a greenmail scheme, its interests are directly and materially adverse to the interests of [Enterprises]." Id. at p. 3 (emphasis added). Enterprises' assumption is not true. As Kahala CCM member Bradley E. Smith testified, "Neither I nor any of my affiliated companies, including Kahala Capital Advisors, LLC and Kahala CCM Factors, LLC, has ever engaged in the practice known as 'greenmailing,' and we have no intention or desire to engage in that practice with respect to Finance Enterprises, Ltd. or any of its affiliated companies." See Declaration of Bradley E. Smith, attached. Kahala CCM does not even believe that Enterprises' corporate funds are threatened by greenmail from any source because of information received about its finances and covenants not to redeem its

own stock. Id. Enterprises produced no evidence that Kahala CCM plans to engage in "greenmail".

III. FINANCE ENTERPRISES, LTD. IS A FORMER CLIENT

Enterprises does not contend that it is a current client of the law firm, and admits that the eight matters in which the firm foreclosed on a loan assigned from Finance Factors to Enterprises have all been completed. See Declaration of Sam Yee, Exhibit C. Thus, the McCorriston firm may accept representation "materially adverse" to Enterprises so long as (1) the lawyer is not, in essence, "switching sides" in the same, or a "substantially related" matter; and (2) the lawyer did not have access to client confidences that are "material" to the current representation. HRPC 1.9(a) & (b). Neither circumstance is present.

IV. THE EXISTING MATTER IS NOT SUBSTANTIALLY RELATED TO ANY FORMER REPRESENTATION

This Court instructed Enterprises to be "very specific" about how the law firm's prior representation of Enterprises is related to the existing matter, or how any client confidences could possibly be material to the current matter. Enterprises has failed to provide the requisite detail in its papers.

Rule 1.9(a), HRPC, codifies the "substantial relationship" test adopted in Otaka v. Klein, 71 Haw. 326, 791 P.2d 713 (1990). HRPC 1.9, comment "Hawaii Code Comparison". Under this test, "Substantiality is present if the factual contexts of the former and present representations are similar or related. It is

measured by the allegations in the complaint and by the nature of the evidence that would be helpful in establishing those allegations." Id. at 386, 791 P.2d at 719 (quoting Trone v. Smith, 621 F.2d 994, 998, 1000 (9th Cir. 1980)).

    A.    The Mahukona Properties Litigation is Not Substantially Related.

Not surprisingly, the 13-year old Mahukona Properties litigation is completely unrelated to this case. That controversy arose out of a partnership formed in 1971 to develop 1,700 acres of land on the Big Island. See Third Am. Complaint filed December 30, 1992, attached hereto as Exhibit 7. Virtually all of the law firm's files on the matter, including all pleadings and correspondence files, were destroyed several years ago, and this law firm has investigated the matter by poring through volumes of old micro-fiched pleadings on the state court's docket.

The firm represented Wendell Pang in that litigation. The firm did not enter an appearance as co-counsel for Enterprises (and several other tangential parties) until October 26, 1993, *after the case had already settled*. See Exhibit 3 to Kahala CCM's 10/9/06 Reply. The settlement was formally put on the record the next day (10/27/93), but the settlement resolving Enterprises' claims was entered as of 10/19/93, and all claims were resolved by settlement as of 10/27/93. Id.; see also Exhibit 1 to Kurtis Leong Decl., at pp. 23, 28, 31-32, 34-35. It is believed the firm entered an appearance for the additional parties to facilitate settlement. See id. at p. 31 (minutes note Mr. McCorriston asserted authority to speak for all Plaintiffs).

The Mahukona Properties litigation and this lawsuit bear no significant similarities and have no relationship to one another. Measured by the pleadings, the Mahukona litigation involved claims of mismanagement and breach of fiduciary duty in connection with a real estate development on the Big Island. See Exhibit 7. This lawsuit, by contrast, involves a collection action against the Fongs on loans secured by shares of stock. Because this case is nearly over and is governed by final foreclosure decrees, there are no issues in the "pleadings" of this action that remain to be litigated under the Otaka standard of substantiality.

Moreover, any client confidences imparted 13 years ago that remain in the fading memories of existing members of the law firm relate to the former representation of Wendell Pang, personally, and have nothing whatsoever to do with this case. Mr. Pang is not involved in this matter, and has not been an executive of Enterprises for many years. Enterprises argues weakly that Mr. McCorriston "met on a number of occasions with the [former] CEO, as well as other [Enterprises] personnel, and was privy to inside information regarding the company and its affiliates and subsidiaries, including the decision-making processes, communications and relationships between officers, directors, and other personnel." See Supplemental Memo, at p. 4. All such information as was relevant was most likely aired for public viewing in that litigation. In any event, any confidential information that might theoretically linger in the lawyers' fading

memories would undoubtedly be stale and irrelevant. Enterprises utterly fails to provide the requisite specificity.

> B.  The Closed Foreclosure Matters are Not Substantially Related

Enterprises does not dispute or add anything of substance to what this law firm's own investigation had already presented to the Court about the nature of the foreclosure matters that Donald Wong occasionally handled on behalf of Enterprises, as the assignee of Finance Factors. Those foreclosure matters involved real estate, not stock, and individual consumer debtors.

**Jeffrey Lau's representations to the Court at the last hearing on October 10, 2006 are false.** As this Court may recall, after being told of the Court's inclination <u>not</u> to disqualify the McCorriston firm, Mr. Lau asked for more time and represented in open court that Donald Wong had presented an invoice to Enterprises in April of 2006 in a certain sum (about $6,500) for legal services rendered on its behalf in connection with debt owed by Rodney Fong secured by Enterprises stock. This is false. None of the former representations involved either debt of Rodney Fong or obligations secured by Enterprises stock. See Declaration of Donald K. O. Wong. The matters were foreclosures on individual loans secured by mortgages on real estate. The only invoice presented to Finance Factors (not Enterprises) in April of 2006 in the approximate range of $6,500 was paid by Finance Factors' check on April 24, 2006 for $6,596.26 in a foreclosure

matter involving mortgagors **Artemio and Gloria Abad**.  See Exhibit 6; see also City Bank v. Abad, 106 Haw. 406, 105 P.3d 1212 (S. Ct. 2005) (the facts of the Abad matter are set out in this published opinion).  This is not a case where the law firm essentially "switched sides" to represent a Finance Factors (or Enterprises) debtor in defending against a foreclosure.

  C. <u>Stacey Hee did not Receive any Confidential Information Germane to this Case</u>

Sam Yee's declaration does not dispute Stacey C.G. Hee's declaration, in which she testified that she did not receive any attorney-client information from him and does not recall ever discussing it at board meetings.  Enterprises quibbles with the scope of Ms. Hee's declaration, but offers no contrary facts.  The fact is that Ms. Hee does not recall the subject of this lawsuit ever coming up while she was a director, and Enterprises has not come forward with any specific evidence to the contrary.  Unlike the lawyer in William H. Raley Co. v. Sup. Ct., 149 Cal. App. 3d 1042 (1983), who was a *current* director at the time his law firm was suing the very company on whose board he sat, Ms. Hee resigned as a director of Enterprises three years ago.  See EEOC v. Luby's Inc., 347 F. Supp. 2d 743, 748 (D. Ariz. 2004) (distinguishing Raley where lawyer resigned, thereby eliminating any risk).  Enterprises has not revealed anything specific about the nature of the confidential information allegedly known to Ms. Hee that could be relevant to this matter.  Rather, Enterprises repeats the same vague mantra for Ms. Hee as was incanted

with respect to Mr. McCorriston. See Decl. of Sam Yee, at pp. 2-3 (concerning alleged "insider information" about the company and affiliates, decision-making, communications, and relationships).

These conclusory statements do not meet the requisite level of specificity ordered by this Court and necessary under the applicable legal standards. See Chuck v. St. Paul Fire & Marine Ins. Co., 61 Haw. 552, 559, 606 P.2d 1320, 1325 (1980) (issue of whether to disqualify counsel is "critical to the conduct of the litigation and should not be decided on the basis of general and conclusory allegations."). Cf. Otaka v. Klein, supra (advice about difficulty of terminating hotel management contract substantially related to suit against former client alleging wrongful cancellation of hotel management contract).

V.    FINANCE FACTORS AND ENTERPRISES ARE DISTINCT ENTITIES

As set forth in the respected treatises quoted in Kahala CCM's reply brief (Mallen & Smith on legal malpractice, Fletcher on corporations), the established general rule is that representation of a subsidiary does not equate with representation of the parent for conflict purposes. See also 7A Cal. Jur. 3d Attorneys at Law § 310 (2006) ("An attorney representing a subsidiary corporation does not also represent the parent.").

Most departures from the general rule have taken place in the context of *downstream* conflicts of interest (i.e., where the client is the parent and the

representation is allegedly adverse to one of its subsidiaries).[1] By contrast, courts are more reluctant to widen the exception where "client" status is sought to be conferred *upstream* on a shareholder or parent company of the client entity. See Brooklyn Navy Yard Cogenration Partners v. Superior Court, 60 Cal. App. 4th 248 (1997) (sole exception is alter ego); Brooklyn Navy Yard v. PMNC, 663 N.Y.S.2d 499 (1997) (companion New York case); Jesse v. Danforth, M.D., 485 N.W.2d 63 (Wis. 1992) (adverse to shareholders).  Cf. Apex Oil Co., Inc. v. Wickland Oil Co., 1995 WL 293944 (E.D. Cal.) (adverse to co-subsidiary).

Moreover, Enterprises fails to link up any specific facts or proof that Finance Factors and Enterprises are "inextricably intertwined" or have any relevant "unity of interests".  Enterprises does not even try to apply the legal tests they espouse beyond self-serving conclusions.  Enterprises fails to specifically show how it is "intertwined" with Finance Factors, a government regulated financial institution.

Morrison-Knudsen, Teradyne, Inc. v. Hewlett-Packard Co., 20 U.S.P.Q.2d 114 (N.D. Cal. 1991), and their progeny are also distinguishable on their facts. Disqualification is not warranted in this case where (1) the matters that are the

---

[1] E.g. Morrison-Knudsen v. Hancock, 69 Cal. App. 4th 223 (1999).  At least one scholar criticized Morrison-Knudsen's criticism of Brooklyn Navy Yard:  "Unfortunately, the Morrison court misreads and then unnecessarily criticizes Brooklyn Navy Yard.  By doing so, Morrison threatens to inject confusion into the conflicts law applicable to parent and subsidiary corporations." Kehr, Robert L., "Who's the Client: Last Year's Court Decisions on Lawyer Conflicts of Interest Have Handed Attorneys an Array of Sometimes Conflicting Rules", 23 L.A. Lawyer 33, 36 (June 2000).

subject of representation are not related to one another; (2) adversity of interests is non-existent vis-à-vis Enterprises, much less Finance Factors; (3) there is no practical adverse consequences on Finance Factors or on the law firm's ability to represent either client; (4) there is no danger that Finance Factors' client confidences would be relevant in this matter; and (5) it is undisputed that the supervision of legal services occurred at the subsidiary level.

VI. CONCLUSION

Enterprises has wholly failed to set forth any specific facts or evidence to justify its position that disqualification is warranted.

DATED: Honolulu, Hawaii, _____OCT 19 2006_____.

          /s/ Christopher J. Cole
ROBERT G. KLEIN
CHRISTOPHER J. COLE

Attorneys for
Kahala CCM Factors, LLC