REINWALD O'CONNOR & PLAYDON LLP
A LIMITED LIABILITY LAW PARTNERSHIP

JERROLD K. GUBEN   3107-0
Pacific Guardian Center
Makai Tower, 24th Floor
733 Bishop Street
Honolulu, Hawaii 96813
Telephone: (808) 524-8350
jkg@roplaw.com

Attorney for Chapter 7 Trustee
RONALD K. KOTOSHIRODO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHALA CCM FACTORS, LLC,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>HIRAM L. FONG, also known as HIRAM L. FONG, SR., et. al.<br><br>　　　　　Defendants. | Civil No. CV-02-00383 SOM/BMK (Contract)<br><br>TRUSTEE'S STATEMENT RE: PLAINTIFF KAHALA CCM FACTORS, LLC'S MOTION FOR AN ORDER APPROVING REPORT OF COMMISSIONER, CONFIRMING THE SALE OF COLLATERAL (1,963 SHARES OF STOCK IN FINANCE ENTERPRISES, LTD.) AT PUBLIC AUCTION; EXHIBIT A; CERTIFICATE OF SERVICE<br><br>*Hearing:*<br>Date:　February 6, 2007<br>Time:　9:30 a.m.<br>Judge:　Honorable Susan Oki Mollway |

182704

**TRUSTEE'S STATEMENT RE: PLAINTIFF KAHALA CCM FACTORS, LLC'S MOTION FOR AN ORDER APPROVING REPORT OF COMMISSIONER, CONFIRMING THE SALE OF COLLATERAL (1,963 SHARES OF STOCK IN FINANCE ENTERPRISES, LTD.) AT PUBLIC AUCTION**

Ronald K. Kotoshirodo, the Chapter 7 Trustee of the Estate of Hiram Leong Fong, Sr. and Ellyn Lo Fong,[1] submits this Statement Re: Plaintiff Kahala CCM Factors, LLC's Motion for an Order Approving Report of Commissioner, Confirming the Sale of Collateral (1,963 Shares of Stock in Finance Enterprises, Ltd.) at Public Auction ("Motion to Confirm").

I.   BACKGROUND

On March 7, 2003, Hiram Leong Fong, Sr. and Ellyn Lo Fong filed for relief under title 11 of the United States Code, and continued to administer their Estate as Debtors-in-Possession.

On December 18, 2003, the Chapter 11 case was converted to Chapter 7, and Mr. Kotoshirodo was appointed the Chapter 7 Trustee.

On July 9, 2004, N. Harwood Street Partners I, L.P. ("N. Harwood"), obtained relief from the automatic stay to continue to enforce its rights as a secured

---

[1] By Rule 25(c), F.R.Civ.P., Mr. Kotoshirodo is substituted for the named parties, Hiram L. Fong, Sr. and Ellyn Lo Fong and the Ellyn Lo Fong Revocable Trust. See 6 Moore's Federal Practice, §25.31 at p. 25-39 at n.4 (bankruptcy trustee substituted for debtor plaintiff).

creditor and foreclose on its security, Finance Enterprises' Stock Certificate No. 238 for 241 shares.

N. Harwood continued with the foreclosure process, while the Trustee continued to solicit offers for both the unencumbered Finance Enterprises shares and the encumbered shares, including the shares pledged to N. Harwood and WAMCO (529 shares).[2]

After negotiations with several prospective purchasers, including TFC Holding Corporation ("Tomato Bank"), the Trustee identified Tomato Bank as submitting the "recommended offer".

On January 5, 2007, the Trustee moved the United States Bankruptcy Court for a hearing to approve an offer of Tomato Bank to purchase the Estate's 2,789 shares, with a minimum purchase of 2,500 shares. See Exhibit A, Trustee's Motion to Authorize Sale of Assets of the Estate Free and Clear of All Liens and Encumbrances and Proposed Bidding Instructions ("Trustee's Motion").

Pursuant to LBR 9013-1, the Bankruptcy Court scheduled a February 6, 2007 hearing on the Trustee's Motion, to be heard concurrently with this Motion to Confirm.

---

[2] WAMCO obtained relief from the automatic stay on September 22, 2004.

The Trustee, to assist this Court in its determination on the issues raised in the Motion to Confirm the sale of the Estate's 241 shares of FE stock to Kahala Capital will discuss the following issues.

## II.   ARGUMENT

    1.   <u>N. Harwood's Order Modifying the Automatic Stay Did Not Extinguish the Debtor's Interest in the 241 Shares of Finance Enterprises' Stock</u>.

The bankruptcy court's modification of the automatic stay did not divest or extinguish the Fong estate of its residual interest in the 241 shares of Finance Enterprises ("FE") stock.

The best explanation of the residual interest of the Fong Estate in the 241 shares, after the order modifying the stay was entered, is found in <u>Catalano v. Commissioner of Internal Revenue</u>, 279 F.3d 682 (9th Cir. 2002), where the court held that the order lifting the automatic stay did not extinguish the estate's interest in the property.

The Ninth Circuit Court wrote:

> ... The filing of a bankruptcy petition creates a bankruptcy estate comprised of the debtor's legal or equitable interests in property wherever located and by whomever held. 11 U.S.C. § 541(a); <u>Hong Kong & Shanghai Banking Corp., Ltd. v. Simon (In re Simon)</u>, 153 F.3d 991, 996 (9th Cir. 1998). As a result, "the district court in which the bankruptcy case is commenced obtains exclusive in rem jurisdiction over all of the property in the estate." With the filing of a bankruptcy

petition, a self-executing automatic stay is imposed which "enjoins the commencement or continuation of any judicial, administrative, or other proceedings against the debtor, enforcement of prior judgments, perfection of liens, and any act to collect, assess or recover a claim against the debtor that arose before the commencement of the case." Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc) (internal quotations omitted). When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the debtor or the debtor's property. Although the property may pass from the control of the estate, that does not mean that the estate's interest in the property is extinguished. See Jim Walter Homes, Inc. v. Saylors (in re Saylors), 869 F.2d 1434, 1437 (11th Cir. 1989)." Relief from an automatic stay entitles the creditor to realize its security interest ... in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee." Nebel v. Richardson (In re Nebel), 175 B.R. 306, 312 (Bankr. Neb. 1994) (citing Killebrew v. Brewer (In re Killebrew), 888 F.2d 1516, 1520 (5th Cir. 1989)). Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and "the act of lifting the automatic stay is not analogous to an abandonment of the property." Nebel, 175 B.R. at 311 (citing In re Ridgemont Apartment Assocs., 105 B.R. 738, 741 (Bankr.N.D. Ga. 1989)).

The Eighth Circuit Bankruptcy Appellate Panel in In re Brook Valley IV, Joint Ventures, 357 B.R. 662 ($8^{th}$Cir. BAP 2006), following Catalano also discussed the effect of a lifting or modifying of the automatic stay.

> When a bankruptcy court lifts, or modifies, the automatic stay, it merely removes or modifies the injunction prohibiting collection actions against the

183497

5

debtor or the debtor's property. Although the property may pass from the control of the estate, that does not mean that the estate's interest in the property is extinguished.... Relief from an automatic stay entitles the creditor to realize its security interest... in the property, but all proceeds in excess of the creditor's interest must be returned to the trustee.... Thus, an order lifting the automatic stay by itself does not release the estate's interest in the property and the act of lifting the automatic stay is not analogous to an abandonment of the property.

It is well-established that the bankruptcy court's modification of the automatic stay in favor of N. Harwood did not divest or extinguish the Fong estate of its residual interest in the 241 shares of FE stock.

2.  <u>The Fong Estate Retains the Right to Redeem its Interest in the 241 Shares of Finance Enterprises' Stock</u>.

The Fong Estate, after the modification of the automatic stay, retained its non-bankruptcy right to redeem its interest in the 241 shares under § 490:9-623, H.R.S.[3] See <u>In re Johnson</u>, 328 B.R. 234 (Bankr.M.D.Fla. 2005) (Right to redeem

---

[3] Section 490:9-623, H.R.S. provides:

**§490:9-623 Right to redeem collateral.**

(a) A debtor, any secondary obligor, or any other secured party or lienholder may redeem collateral.

(b) To redeem collateral, a person shall tender:

(1) Fulfillment of all obligations secured by the collateral; and

(2) The reasonable expenses and attorney's fees described in section 490:9-615(a)(1).

collateral may be exercised at any time before the secured party disposes of or enters into a contract for its disposition) and In re Robinson, 285 B.R. 732 (Bankr.W.D.Okla. 2002) (right to redeem must be made in accordance with state law, by fulfillment of all obligations secured by the collateral).

In this case, the "disposition" of the collateral by N. Harwood, and its successors-in-interest, will be the entry of the order approving the Motion to Confirm, § 490:9-610, H.R.S. The disposition of the Fong's Estate interest in the 241 shares will only occur when this court approves the Motion to Confirm, because at the hearing to confirm the auction results, this court may entertain higher and better offers for the 241 shares.

The final issue is the amount necessary to fulfill or satisfy the N. Harwood claim, as required by § 490:9-623, H.R.S.

---

(c) A redemption may occur at any time before a secured party:

(1) Has collected collateral under section 490:9-607;

(2) Has disposed of collateral or entered into a contract for its disposition under section 490:9-610; or

(3) Has accepted collateral in full or partial satisfaction of the obligation it secures under section 490:9-622.

3. <u>The Bankruptcy Court Has the Ultimate Right to Determine the N. Harwood Claims</u>.

This Court may not determine the "amount" of N. Harwood's secured claim and it is up to the Bankruptcy Court to decide the amount of the N. Harwood claim and the amount needed by the Fong Estate to redeem the 241 FE shares.

In this case, N. Harwood filed its proof of claim on November 2, 2005 in the Fong bankruptcy, and thereby submitted itself to the equity jurisdiction of the Bankruptcy Court. By filing a proof of claim and submitting itself to the jurisdiction of the Fong Bankruptcy Court, the Bankruptcy Court obtained the right to determine and allow N. Harwood's secured claim, notwithstanding any judgment by a non-bankruptcy court. See <u>Granfinanciera, S.A. v. Nordberg</u>, 492 U.S. 33 (1989).

In <u>Carey v. Ernst,</u> 333 B.R. 666 (S.D.N.Y. 2005), the issue was whether the bankruptcy court had to follow a state court judgment awarding the creditor 12% pre-judgment interest. The bankruptcy court reduced the state court award of 12% pre-petition, judgment interest to 9%. The judgment creditor appealed the reduction of the state court awarded interest rate.

In responding to the creditor's argument that the bankruptcy court did not have jurisdiction to modify the state court judgment, the District Court wrote:

> Judge Blackshear acknowledged the state court judgment, but cited his own opinion in <u>In re United States Lines, Inc.</u>, 199 B.R. 476 (Bankr. S.D.N.Y. 1996),

for the proposition that the Bankruptcy Court had "jurisdiction to determine whether pre-and post-judgment interest is allowable under the Bankruptcy Code." (Fee Op. at 6.) Judge Blackshear also noted that the purpose of his "review is to determine" to what extent the judgment is enforceable against the Debtor's estates pursuant to the Bankruptcy Code, not to decide the validity of the state court judgment," and that "the doctrines of full faith and credit, res judicata, and collateral estoppel did not prevent a debtor or representative of the debtor's estate from challenging the interest portion of a state court judgment." (Id. at 6-7; quoting In re United States Lines, Inc., 199 B.R. at 480). Judge Blackshear reduced Carey's pre-judgment interest rate to 9% on the ground that Carey had billed "needless hours on matters for the sole purpose of racking up interest on a legitimate stated." He denied post-judgment interest, stating the judgment showed as a general unsecured debt.

Review of Carey's daynotes supports the Bankruptcy Court's conclusion that Carey's claim for account stated was allowed to linger for years while he explored the defendants' assets and his claim against the Debtors' son. (Carey Fee App. and attached exhibits.)

Judge Blackshear correctly relied on the Bankruptcy Court's equitable powers to determine the allowance of claims before it. (Fee Op. at 6-7.) Just as the Bankruptcy Court has power to determine how much of the state court judgment should be allowed based on a "reasonableness" test, it may also determine what rate of interest to allow. See Kohn, 157 B.R. 523; Pepper v. Utton, 308 U.S. 295, 60 S. Ct. 238. 84 L Ed. 281 …. The Bankruptcy Court was therefore free to determine the rate of pre-judgment interest. Based on his finding that Carey had needlessly extended the date of judgment to rack up interest (see supra note 8 and accompanying text), Judge Blackshear did not err as a matter of law in reducing the rate of interest, and not only is his finding not clearly erroneous, it is supported by the handwritten

daynotes. Judge Blackshear's decision to reduce the interest rate on Carey's pre-judgment claims from 12% to 9% based on his finding is therefore upheld.

Judge Cornelius Blackshear, in In re United States Lines, Inc., 199 B.R. 476 (Bankr.S.D.N.Y. 1996), discussed the interaction of a non-bankruptcy court judgment and the bankruptcy court's claims allowance jurisdiction.

> Claimant argues that the Trust should be barred from challenging the allowability of the interest portion of the Valverde Claim based upon the doctrines of full faith and credit, res judicata and/or collateral estoppel. In sum, Claimant argues that this Court lacks jurisdiction over the issue of interest because that issue was decided in the state court litigation. See Respondent Memorandum of Law filed February 2, 1995 at p.9 (citing Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 375, 84 L. Ed. 329, 60 S. Ct. 317 (1940)). As will be discussed below, the Claimant's arguments are entirely misplaced.
>
> First, this Court is not re-deciding the validity of the Valverde Judgment. For all intensive purposes, this Court accepts the state court's "liquidation" of the Valverde Claim. Rather, the issue before this Court is to what extent the Valverde Judgment is enforceable against the Debtors' estates pursuant to the Bankruptcy Code. Thus, the full faith and credit doctrine is not implicated here.
>
> Second, the allowability of the Valverde Judgment was not and could not, have been addressed in the state court litigation. Admittedly, the doctrine of res judicata prohibits parties to a litigation from re-litigating issues that were or could have been addressed in the action. Burgos v. Hopkins, 14 F.3d 787, 789 (2d Cir. 1994); Allen v. McCurry, 449 U.S. 90, 94, 66 L. Ed. 2d 308, 101

183497

10

S. Ct. 411 (1980). However, the claims allowance process is within the exclusive jurisdiction of the bankruptcy courts. In re Bowers, 16 Bankr. 298, 302 (Bankr. D. Conn. 1981) (citing Vanston Bondholders Protective Comm. v. Green, 329 U.S. 156, 91 L. Ed. 162, 67 S. Ct. 237 (1946)); In re Comstock Fin. Services, Inc., 111 Bankr. 849, 855 (Bankr. CD Cal. 1990). The Valverde Claim was among the many claims sent to the state courts to be liquidated pursuant to 28 U.S.C. § 1334(c)(1). Now that it has been liquidated, the issue as to the allowability of that claim is properly before this Court. Since the allowability of the claim in bankruptcy is exclusively within the province of the bankruptcy courts and could not have been addressed by the state courts, the doctrine of res judicata is inapplicable.

Similarly, in Kohn v. Leavitt-Berner Tanning Corp., 157 B.R. 523 (N.D.N.Y. 1993), the issue was whether the bankruptcy court, under 28 U.S.C. 1738, had to give full faith and credit to a state court judgment, which would preclude any adjustment of the judgment rendered by the state court.

In discussing the interface of the state court judgment and 11 U.S.C. § 502(b), the bankruptcy court claims allowance process, the Kohn court wrote:

> 28 U.S.C. § 1738 "specifically requires all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so." Allen v. McCurry, 449 U.S. 90, 96, 66 L. Ed. 2d 308, 101 S. Ct. 411 (1980) (citing 28 U.S.C. § 1738). The Second Circuit has noted that bankruptcy courts fall within this mandate. Kelleran v. Andrijevic, 825 F.2d 692, 694 (2d Cir. 1987), cert. denied, 484 U.S. 1007, 98 L. Ed. 2d 652, 108 S. Ct. 701 (1988).

The claimant argues that the preclusive effect of this statute bars the federal courts from tampering with the amount owed on the judgment. At first blush this argument appears to have merit. Any reduction in the amount of the judgment seems to accord the state court judgment less than full faith and credit. In effect, this places § 1738 at odds with § 502 (b) (6) of the bankruptcy code. A closer examination of the language of § 502, however, permits a reading which both honors the state court judgment, and at the same time allows the bankruptcy court to fulfill the equitable purpose of the bankruptcy code.[5]

Section 502 (b) requires the bankruptcy court to undertake a two-part analysis. First the court must "determine the amount of [a creditor's] claim as of the date of the filing of the petition . . . ." In a case such as the one at bar, this means accepting as non-reviewable the amount of the claim as determined by the state court. This figure then forms the basis for the second part of the analysis, wherein the court determines how much of the claim should be allowed. Applying the principles of equity inherent in the code, the court looks behind the judgment to ascertain the relationship between the parties. When the parties stand as lessor and lessee, as in the case at bar, § 502 (b) (6) applies. This subsection provides a formula to which the previously determined judgment figure is applied, resulting in a second figure – the allowable portion of the original judgment. This second figure represents Congress' view of what is equitable between a lessor and lessee in bankruptcy.

---

[5] The bankruptcy court in passing on allowance of claims sits as a court of equity." Pepper v. Litton, 308 U.S. 295, 307, 84 L. Ed. 281, 60 S. Ct. 238 (1939).

The discussion of 11 U.S.C. § 502(b) and the Bankruptcy Court claims allowance jurisdiction is particularly important because it determines the amount that the Fong Estate must pay to redeem the 241 shares as required by § 490:9-623, H.R.S. The Trustee submits that it is the Bankruptcy Court which has jurisdiction to determine the amount that the Fong Estate must pay to redeem the 241 shares because, N. Harwood submitted itself to the equity jurisdiction of the Bankruptcy Court by filing its proof of claim and thereby submitting itself to the equity-based claims allowance jurisdiction of 11 U.S.C. § 502(b).

Even if this Court determines the liquidated amount that the Fong Estate owes N. Harwood, the Bankruptcy Court has the ultimate equitable jurisdiction under § 502(b) to determine the amount that the Fong Estate must pay to N. Harwood in order to exercise its right of redemption under § 490:9-623, H.R.S.

### III. CONCLUSION

Based on the above, Ronald K. Kotoshirodo, the Trustee of the Estate of Hiram Leong Fong, Sr. and Ellyn Lo Fong, represents:

(1) the modification of the automatic stay did not divest or extinguish the Fong Estate's interest in the 241 shares of Finance Enterprises stock pledged to N. Harwood;

(2) the Fong Estate retained its right of redemption, under § 490:9-623, H.R.S., to redeem the 241 shares of FE until this Court "disposes" of the FE shares;

(3) the statutory redemption price must be liquidated by the Fong Bankruptcy Court after the Trustee sells the 241 shares at a bid price of $1,100.00 per share because (a) N. Harwood submitted itself to the equity jurisdiction of the Bankruptcy Court for claim adjustment, and (b) the claims allowance process under 11 U.S.C. § 502(b) is an equitable procedure.

The Trustee requests this Court abstain from approving the Motion to Confirm and refer the proceedings to the Bankruptcy Court for a final adjudication.

DATED: Honolulu, Hawaii, January 19, 2007.

_____
JERROLD K. GUBEN
Attorney for Trustee,
RONALD K. KOTOSHIRODO