LAW OFFICES OF REUBEN S.F. WONG

REUBEN S.F. WONG          #638-0
DELWYN H.W. WONG          #7170-0
COLETTE L. HONDA          #7597-0
Suite 1006, Finance Factors Center
1164 Bishop Street
Honolulu, Hawaii 96813
Telephone:  (808) 531-3526
Facsimile:  (808) 531-3522

Attorneys for Defendant
 FINANCE ENTERPRISES, INC.

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JAN 1 9 2007

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHALA CCM FACTORS, LLC, | ) CIVIL NO. CV-02-00383 SOM BMK |
| | ) (Contract) |
| Plaintiff, | ) |
| | ) DEFENDANT FINANCE |
| vs. | ) ENTERPRISES, LTD.'S |
| | ) MEMORANDUM IN OPPOSITION TO |
| HIRAM L. FONG, ALSO KNOWN | ) PLAINTIFF KAHALA CCM |
| AS HIRAM L. FONG, SR., ET AL., | ) FACTORS, LLC'S MOTION FOR AN |
| | ) ORDER APPROVING REPORT OF |
| Defendants. | ) COMMISSIONER, CONFIRMING THE |
| | ) SALE OF COLLATERAL (1,963 |
| | ) SHARES OF STOCK OF FINANCE |
| | ) ENTERPRISES, LTD.) AT PUBLIC |
| | ) AUCTION, FILED ON DECEMBER |
| | ) 13, 2006; EXHIBITS "A" – "E"; |
| | ) DECLARATION OF DANIEL LAU; |
| | ) DECLARATION OF REUBEN S.F. |
| | ) WONG; CERTIFICATE OF SERVICE |
| | ) |
| | ) |
| | ____) |

ORIGINAL

478

# TABLE OF CONTENTS

I.      Introduction………………………………………………………......1

II.     Argument……………………………………………………….…....4

        A.      In Considering the Motion, the Court Acts in Equity…………….......5
                With Just Regard for the Rights of All Concerned,
                and Is Obliged to Recognize and Enforce FE's
                Prior Encumbrance

        B.      The September 1, 2006 Transfer of 1,963 Shares from……….……...9
                Harwood to Kahala should have Triggered  FE's Right of
                First Refusal and FE is Entitled to Acquire the Shares
                at the Price Paid by Kahala to Harwood

                1.      Harwood's interest in Fong family shares was a………....…..9
                        transfer of the stock itself which established the
                        fair market value of the Shares at the price paid
                        by Kahala to Harwood

                2.      Harwood and Kahala failed to provide sufficient…………......13
                        notice for FE to exercise its Right of First Refusal
                        for the Fong family Shares.

        C.      Kahala's Proposed Post-Confirmation Procedures are……….…......16
                Substantially Prejudicial to and in Derogation of FE's
                Right of First Refusal

III.    Conclusion……………………………………………………….……21

9501

# TABLE OF AUTHORITIES

## CASES CITED

Addiego v. Hill, 268 Cal.App. 2d 280, 287 (1965)……………………………....…9, 13, 16

Clark v. Airavada Corp., 12 F Supp 1114 (D.Nev. 1998)…………………….....................18, 19

First Trust Co. of Hilo Ltd. v. Reinhardt. 3 Haw.App. 589, 655 P.2d 891 (App. 1982)……..5

Fujii v. Osbourne, 67 Haw. 322, 330-31, 687 P.2d 1333 (1984)…………………………….6

Groves v. Prickett, 420 F.2d 1119, 1122 (9th Cir. 1970)…………………………………….7, 8

Hoge v. Kane II, 4 Haw.App. 533, 540, 670 P.2d 36, 40 (App. 1983)………………………5

In re Beker Industries Corp., 63 B.R. 474 (Bankr.S.D.N.Y. 1986)……………….....………11

In re the Hawaii Corporation, 829 F.2d 813, 814 (9th Cir. 1987)……………………..……...8

In re Todd, 118 Bankr. 432 (D.S.C. 1989)………………………………………………….6

Oregon RSA No. 6, Inc. v. Castle Rock Cellular of
Oregon Limited Partnership, 840 F.Supp 770, 775 (D.Or. 1993),
aff'd in part and rev'd in part on other grounds in 76 F.3d 1003 (9th Cir. 1996)……………...7

Schrader v. Benton, 2 Haw.App. 564, 635 P.2d 562 (App. 1981)…………………………….7, 8

## STATUTES CITED

Haw.Rev.Stat. § 414-111……………………………………………………….....16

Haw.Rev.Stat. § 414-112……………………………………………………………16

Haw.Rev.Stat. § 490:9-620…………………………………………………………14, 15

Haw.Rev.Stat. § 490:9-621…………………………………………………..……14

Haw.Rev.Stat. § 667-3…………………………………………………………..…6

## TABLE OF AUTHORITIES (p. 2)

11 U.S.C. § 362(d)(1)…………………….………………………………………...….…10

11 U.S.C. § 506(a)…………………………………………………………………..11

## OTHER AUTHORITY

Financial Accounting Standards Board Statement No. 157 (FASB No. 157)……………13

12 Fletcher, Cyclopedia of the Law of Private Corporations,
1123§A5457.1 (1957 Rev.Vol.)…………………………………………………………...9

Generally Accepted Accounting Principles (GAAP Rules) …………………………....13

9446

**DEFENDANT FINANCE ENTERPRISES, LTD.'S MEMORANDUM IN OPPOSITION TO MOTION FOR AN ORDER APPROVING REPORT OF COMMISSIONER, CONFIRMING THE SALE OF COLLATERAL (1,963 SHARES OF STOCK OF FINANCE ENTERPRISES, LTD.) AT PUBLIC AUCTION, FILED ON DECEMBER 13, 2006**

Plaintiff Kahala CCM Factors, LP's (hereinafter "Plaintiff" or "Kahala") Motion for An Order Approving Report of Commissioner, Confirming the Sale of Collateral (1,963 Shares of Stock of Finance Enterprises, Ltd.) at Public Auction, Filed on December 13, 2006, should be denied to the extent that such a sale infringes upon Finance Enterprises' right of first refusal.

I.    INTRODUCTION.

Finance Factors and its affiliated companies were established in the early 1950's by certain prominent businessmen, at a time in Hawaii's history when the doors of commerce and credit were not always readily open to borrowers of lesser financial means. The nature of its origin has perpetuated a unique sense of identity and purpose that has governed Finance Factors since its inception. Mindful of this legacy, in 1976, the company's founders restructured Finance Factors and its affiliated companies, in order to preserve ownership of the company within each of the six (6) remaining founders' families. Each founder exchanged his interest in Finance Factors and its affiliates for shares in a newly created holding company - - Finance Enterprises, Ltd. ("FE"). The founders placed a right

1

of first refusal into FE's Articles of Incorporation, which provides that "no stock or subscription right to stock in the corporation shall be transferred to any person without first offering the stock for sale by written notice to the corporation at the <u>same price</u> and on the <u>same terms</u> as would govern upon a transfer to such other person". <u>See</u> Articles of Incorporation at Article IV, Section 4, attached hereto as Exhibit "A" (Emphasis added). Under FE's Articles, the only exception to FE's right of first refusal concerns transfers within the respective families of each founder, such as, "brothers, sisters, spouse, lineal descendants, and next of kin." <u>Id</u>. FE's legacy of family ownership remained undisturbed for decades, until the financial problems of one of its shareholders befell the company.

      The late Senator Hiram Fong was one of the company's founders and a major shareholder. During his lifetime, the Senator distributed his shares in FE to various members of his immediate family. However, in 1994, the Senator's financial problems compelled him to pledge his family's shares in FE as collateral for two (2) loans in the aggregate amount of $790,000. As his health and financial situation deteriorated, the Senator filed for bankruptcy in March, 2003. Unfortunately, the Senator passed away in 2004, and his creditors now seek to hold the company family legacy hostage as ransom for the late Senator's debts.

      On March 20, 2003 and May 21, 2004, former Plaintiff and Party-In-Interest N. Harwood Street Partners I, LP ("Harwood") filed successive motions to

obtain relief from the bankruptcy stay in order to foreclose against the Fong family's shares.

In 2006, there were ongoing discussions between the attorneys for FE and Harwood concerning the possible acquisition of the Fong family shares by FE. However, on September 1, 2006, Harwood abruptly transferred its interest in the Fong family shares to Plaintiff Kahala. This transfer occurred without notice or opportunity to acquire the shares being provided to FE. Upon information and belief, Kahala acquired the rights to the Fong family shares at a price significantly lower than the aggregate average price of $1,300 per share that Kahala would later credit bid at the November 1, 2006 auction. FE has made repeated requests to both Harwood and Kahala to disclose the price paid by Kahala for Harwood's interest in the Fong family shares. Attached hereto as Exhibit "B" is a copy of a letter dated December 29, 2006, indicating in substance, Harwood's refusal to provide FE with information about a certain "Sale and Assignment dated September 1, 2006" between Harwood and Kahala. Attached hereto as Exhibits "C" and "D" are two letters from Reuben S.F. Wong to attorney Robert Klein asking Kahala to respond to FE's Request For Production of Documents concerning the Harwood to Kahala sale, but to date attorney Klein has not responded.

II.    ARGUMENT

FE has no objection to Kahala's Motion to Confirm provided that confirmation of the sale is subject to FE's rights of first refusal, which entitles FE to purchase the Fong family shares at the same price as the transaction between Kahala and Harwood.   Upon information and belief, Kahala paid Harwood significantly less than the aggregate average price of $1,300 per share that Kahala would later credit bid at the November 1, 2006 auction.   The Fong family shares are more particularly described in the Commissioner's Report, filed herein on November 16, 2006 as follows:

Lot #1: 1,092 shares pertaining to the December 14, 1993 "Pledge Agreement", as described in the February 3, 2004 Judgment;

Lot #2: 630 shares pertaining to the January 26, 1994 "Fong Jr. Pledge Agreement", as described in the December 1, 2004 Judgment; and

Lot #3: 241 shares pertaining to the January 27, 1994 "Trustee's Pledge Agreement", as described in the December 1, 2004 Judgment.   See Commissioner's Report, filed herein on November 16, 2006 at page 3.

In addition, FE opposes the post-confirmation procedures proposed by Kahala, in that they are substantially inconsistent with the procedural requirements set forth in FE's Articles of Incorporation.

4

A.    <u>In Considering the Motion, the Court Acts in Equity With Just Regard for the Rights of All Concerned, and Is Obliged to Recognize and Enforce FE's Prior Encumbrance</u>.

As Kahala observes, under Hawaii law, "a court's authority to confirm a judicial sale is a matter of equitable discretion." <u>Hoge v. Kane II</u>, 4 Haw.App. 533, 540, 670 P.2d 36, 40 (App. 1983).   In exercising its discretion, the Court should act in the interest of fairness and prudence and with just regard for the rights of all concerned and the stability of judicial sales." <u>Id</u>. "[T]he confirmation of sale is the equivalent of a valid contract of sale." <u>Id</u>.  (citing <u>First Trust Co. of Hilo Ltd. v. Reinhardt</u>. 3 Haw.App. 589, 655 P.2d 891 (App. 1982).

This Court's prior Findings of Fact and Conclusions of Law have correctly determined that Kahala's security interest in the FE stock is "subject to the right of first refusal of Finance Enterprises, Ltd. and its shareholders".  <u>See</u> (1) *Plaintiff's Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment as to Counts I and III of the Amended Complaint filed herein on February 3, 2003, filed September 20, 2004*, filed herein on December 1, 2004 (the "December 2004 Order"), at page 8; and (2) *Plaintiff's Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment against Defendants Rodney Leong Fong, also known as Rodney L. Fong and Patsy Nakano Fong, also known as Patsy N. Fong filed on October 1, 2003*, filed herein on February 3, 2004 (the "February 2004 Order"), at page 6.

Such Orders also expressly provide that "any confirmation shall be subject to the rights of Enterprise to purchase the shares at the same price and or the same terms . . . " See, the December 2004 Order at page 10 and the February 2004 Order at pages 13-14. Thus, the Court has plainly acknowledged that the right of first refusal is entitled to protection.

Indeed, Kahala itself has previously acknowledged that its rights are subject to FE's right of first refusal, and has not previously asked the Court to act in derogation thereof. This was correct under the Hawaii foreclosure statute, which provides that judgments of foreclosure extinguish subsequent liens "without forcing prior mortgages to their rights of recovery." Haw.Rev.Stat. § 667-3; See generally, Fujii v. Osbourne, 67 Haw. 322, 330-31, 687 P.2d 1333 (1984). The right of first refusal, if anything, has greater priority and significance than a prior mortgage, because such right is an inherent part of the stock, as set forth in the Articles of Incorporation, as opposed to being a mere security interest in property.

There is no question that FE's right of first refusal is valid and enforceable. See In re Todd, 118 Bankr. 432 (D.S.C. 1989), wherein the Bankruptcy Court found that the right of first refusal held by a debtor's partner was a valid and enforceable right, which allowed the partner to match the price offered by a third party for the debtor's partnership interest.

In <u>Oregon RSA No. 6, Inc. v. Castle Rock Cellular of Oregon Limited</u> <u>Partnership</u>, 840 F.Supp 770, 775 (D.Or. 1993), aff'd in part, rev'd in part on other grounds in 76 F.3d 1003 (9th Cir. 1996), the District Court in Oregon found it fundamental that By-Laws which restrict transfers in close corporations, such as FE, are valid restrictions that may properly be used to keep shares within a small circle of family and friends.  <u>Id.</u>, 840 F.Supp. 770, 775.  The Court in the <u>Oregon</u> case stated that the "purpose of a right of refusal clause in close corporations or partnerships is commonly used to prevent the intrusion of an uninvited outsider".  The Ninth Circuit in <u>Groves v. Prickett</u>, 420 F.2d 1119 (9th Cir. 1970), reinforced these restrictions on transfers of stock by noting that they were often "necessary for the protection of corporation and its stockholders against rivals in business who might purchase its shares for the purposes of acquiring information, which might be thereafter used against the interests of the company." <u>Id</u>. at 1122.`

As noted in the "Introduction," FE was founded by certain prominent businessmen to fulfill a specific purpose and to extend credit to those who found difficulty in obtaining credit elsewhere.  These are the principles that Mr. Daniel Lau, the last surviving member of the early founders, seeks to uphold.  Thus, FE's right of first refusal is one which should be upheld by this Court.

In Hawaii, a court in equity looks to the substance rather than the form of the contract in giving effect to the intentions of the parties.  <u>Schrader v. Benton,</u>

2 Haw.App. 564, 635 P.2d 562 (App. 1981). As discussed supra, rights of first refusal are valid restrictions on the transfer of stock. See "Introduction". Since the founding families of FE substantially intended that interest in and control of the company remain within the group of founders, the Court must give effect to those intentions and allow FE to exercise its right of first refusal upon any attempted transfer or sale of its stock to outsiders. Schrader, 2 Haw.App. at 635 P.2d 562. When Kahala acquired the Fong family shares from Harwood, it assumed all rights and obligations of Harwood under the promissory notes, including the restriction on stock transfer subject to the right of first refusal. The Ninth Circuit in In re the Hawaii Corporation, 829 F.2d 813, 814 (9th Cir. 1987) reinforced this proposition by holding that any negotiability of securities under the UCC means the transferee takes the rights of the transferor. Id.

In Groves v. Prickett, a trustee in bankruptcy instituted a proceeding to determine the existence and validity of claims of parties to certain shares of stock in the possession of the trustee. 420 F.2d 1119. The Court noted that a "valid preference right . . . may be specifically enforced by the corporation. To limit a corporation to an action for damages would defeat the very purpose of the contract and would not furnish an adequate remedy." Id., 420 F.2d at 1122 (Emphasis added). Even where the stock was already sold to a third party, the Court is within its equitable jurisdiction "to cancel the sale and enforce the preference right to

8

purchase." <u>Id.</u> (citing 12 Fletcher, Cyclopedia of the Law of Private Corporations, 1123 §A 5457.1 (1957 Rev. Vol.); <u>accord</u> <u>Addiego v. Hill</u>, 268 Cal.App. 2d 280. Thus, it would be within the exercise of this Court's equitable jurisdiction to enforce FE's right of first refusal at the time of the Harwood-Kahala transaction. Under the Articles of Incorporation, FE is entitled to exercise its right at the <u>same price</u> and under the <u>same terms</u> as Kahala. (Emphasis added).

     B.     <u>The September 1, 2006 Transfer of 1,963 Shares from Harwood to Kahala Should Have Triggered FE's Right of First Refusal and FE is Entitled to Acquire the Shares at the Price Paid by Kahala to Harwood</u>.

          1.     <u>Harwood's interest in the Fong family shares was a transfer of the stock itself which established the fair market value of the shares at the Price Paid by Kahala to Harwood</u>.

The sale of Harwood's interest in the Fong family shares to Kahala was a transfer of the stock itself under the unique facts of this case, and that transfer established the fair market value of the Fong family shares at which the right of first refusal should be exercisable. Kahala apparently contends that it bought only a promissory note, not the stock. This is a fiction that merely exalts form over substance. The note was secured by a pledge of the Fong family shares, but at the time of the purchase, the obligor on the note was a debtor in a bankruptcy proceeding. There was no hope of recovering anything on account of the note other than the value of the shares, because Harwood had proven to the Bankruptcy Court that the shares were worth less than the debt secured by the

stock. This fact was necessary to obtain relief from the automatic stay. Pursuant to Bankruptcy Code § 362(d)(1), Harwood was entitled to relief from the automatic stay only because there was no chance of a reorganization (the Debtor was in a chapter 7 case) and the Debtor had no equity in the collateral. Moreover, to obtain relief from the automatic stay, Harwood agreed not to seek a deficiency. Therefore, Harwood's sole recourse under the note was to sell the Fong family shares.

Harwood could have sold the Fong family shares at a standard foreclosure sale to Kahala. Rather than paying to acquire Harwood's note and security interest, Kahala could have bid the exact same amount to acquire the shares directly at a standard foreclosure sale. Thus, Harwood would have received the same amount of payment either way; it could have structured the sale of the shares as a standard foreclosure sale without suffering any prejudice.

Instead however, Harwood structured the sale of the shares to Kahala as a "step-transaction", whereby Kahala acquired the Fong family shares by first acquiring Harwood's secured creditor rights, then replacing Harwood as Plaintiff in the foreclosure action, and then subsequently credit bidding at such foreclosure action to acquire the shares for itself. By doing so, Harwood allowed Kahala to artificially peg the value of the Fong family shares to the face amount of the debt. Harwood and Kahala should not be allowed to inflate the value of those shares

through a fictional "credit bid" when, had they proceeded directly to a foreclosure sale, the value of the shares (and the amount that FE or its shareholders would have had to pay to exercise the right of first refusal) would have been limited to the amount actually paid by Kahala to Harwood, not the face amount due under the Harwood note. They chose not to engage in the foreclosure sale, but to sell the promissory note as part of a step-transaction scheme to inflate the price through a fictional credit bid to the detriment of FE. This Court should not condone such manipulation. The amount actually paid by Kahala to Harwood for the promissory note should be the purchase price for purposes of exercise of the right of first refusal.

In a typical foreclosure, collateral is sold to repay a debt. If a creditor assigns its interest, the interest acquired by the secured creditor is the right to be repaid (R) which is secured by the value of the collateral (C). Where the face amount of the debt (D) is greater than the value of the collateral, the creditor is generally entitled to a deficiency judgment.

However, in this case, there is no real or equitable distinction between the right to be repaid (R) and the value of the collateral (C). The S.D.N.Y. Bankruptcy Court in In re Beker Industries Corp., 63 B.R. 474 (Bankr.S.D.N.Y. 1986) held that under Section 506(a) of the Bankruptcy Code, a debtor in possession could sell encumbered property free and clear of the secured liens even

though the aggregate amount of the secured liens exceeded the sales price. Id. In so ruling, the Bankruptcy Court held that a secured creditor's claim is "secured" to the extent of the "value" of such creditor's interest in the collateral, as distinguished from the amount of the lien. Id.

In its filings with the Bankruptcy Court, Harwood made the representation that the late Senator Fong's estate, as debtor, had no equity in the Fong family shares, which is to say, that the face amount of the debt (D) was greater than the value of the collateral (C). As a condition to granting Harwood relief from the bankruptcy stay, the Bankruptcy Court ordered that Harwood be precluded from seeking a deficiency judgment against the debtor. Thereafter, the only way for Harwood to collect on its right to be repaid (R) was to sell the collateral (C). Once Harwood gave up the right to seek a deficiency judgment, the value of the right to be repaid (R) - - as distinguished from the amount of the debt (D) - - became equal to and synonymous with the value of the collateral (C). Thus, when Harwood transferred its right of repayment under the late Senator Fong's loans (R), in substance, it was transferring the Fong family shares that secured such loans (C). FE should therefore be allowed to exercise its right of first refusal at the same price offered to Kahala, when it acquired its rights to the collateral (C) from Harwood. Upon information and belief, Kahala acquired its rights to the Fong family shares at a price significantly lower than the aggregate

average price of $1,300 per share that it would later credit bid at the November 1, 2006 auction.

This understanding is supported by generally accepted accounting principles ("GAAP rules") and in particular, the Statement of Financial Accounting Standards Board Statement No. 157 (FASB No. 157). GAAP and FASB Rules require that in dealing with bad debt, a creditor must discount the value of its right of repayment (R) to the value of the collateral (C). The GAAP principle is called the "In Substance Foreclosure Rule" and the corresponding FASB Statement No. 157 is called the "Fair Value Measurements." The purpose of these rules is to prevent a creditor from using a legal fiction to overstate the true value of its assets. Accordingly, when Kahala acquired Harwood's right to be repaid (R), Kahala was really acquiring the collateral itself (C).

2.  <u>Harwood and Kahala failed to provide sufficient notice for FE to exercise its Right of First Refusal for the Fong family Shares.</u>

Kahala failed in several instances to provide notice and opportunity sufficient to allow FE to exercise its rights of first refusal for the shares. Under <u>Addiego v. Hill</u>, a party invoking the right of first refusal is entitled "to be given notice with sufficient <u>specificity</u> upon which to base an acceptance." 268 Cal App. 2d at 287 (Emphasis added) In <u>Addiego</u>, the terms contained in an initial letter of notification were insufficiently specific as to stock price. Therefore, the corporation did not waive its right of first refusal. The September 28, 2006 motion

to substitute parties, filed herein by Kahala was likewise inadequate notice to FE, since it failed to provide sufficient financial information to enable FE to make a decision. For example, FE has never been informed of the price per share paid by Kahala to Harwood, and the parties to that transaction continue to withhold such information from FE. In the absence of such notice and critical financial information, FE's right of first refusal cannot be deemed to have expired or been waived. Id.

In addition to its failure to provide notice at the time of substitution of parties, Kahala further failed to provide notice to FE as required under Haw.Rev.Stat. § 490:9-620, and 21. Under Haw.Rev.Stat. § 490:9-621 (Notification of Proposal to Accept Collateral), "a secured party [i.e. Kahala] who desires to accept collateral in full or partial satisfaction of the obligation it secures shall send its proposal to . . . any person [i.e. FE] from whom the secured party has received before the debtor consented to the acceptance, an authenticated notification of a claim of an interest in the collateral." Id. Here, FE was entitled to notice because the stock certificate itself contained a written legend which serves as notice of FE's right of first refusal. (See Exhibit "E"). The notice requirement applies to Kahala, because in waiving the right to seek a deficiency judgment, Kahala was in substance looking to the Fong family shares "in full or partial satisfaction of the obligation that the shares secured." Haw.Rev.Stat. § 490:9-621.

14

Under Haw.Rev.Stat. § 490:9-620, a secured party may accept the collateral in full or partial satisfaction of the obligation it secures only the secured party does <u>not</u> receive a notification of objection within twenty (20) days from a party entitled to notice under section 490:9-621 [Notification of Proposal to Accept Collateral]." Haw.Rev.Stat. §490:9-620(d). Under the statute, had FE been provided with notification of the proposal by Kahala, FE would have had twenty (20) days to object to the proposal. If Kahala received no objection within twenty (20) days, Kahala would be free to accept the collateral in full or partial satisfaction of the obligation. <u>See</u> Haw.Rev.Stat. § 490:9-620 (Acceptance of collateral in full or partial satisfaction of obligation; compulsory disposition of collateral).

FE had absolutely no opportunity to lodge an objection within the twenty (20) day period, since Kahala never tendered an offer to FE to exercise its right of first refusal. Further, nowhere does UCC Article 9 place the burden on the secured party to search for any creditor attempting to accept the collateral in satisfaction of any debt obligation. To the contrary, the burden of notification should and must placed on Kahala, since it was the party whose action would affect other secured parties' interests.

In summary, Kahala failed under FE's Articles of Incorporation and the Haw.Rev.Stat. to provide notice and opportunity sufficient for FE to exercise

its right of first refusal. FE should not be penalized for Kahala's lack of notice or failure to provide adequate financial information. Under Addiego, supra, such inadequate information provided to a corporation extends the right of first refusal and Kahala's continuing refusal to provide price per share information to FE means that FE's time for exercising its right of first refusal cannot be deemed to have expired or been waived because notice was not given. Addiego, 268 Cal.App. 2d at 287.

C.    Kahala's Proposed Post-Confirmation Procedures are Substantially Prejudicial to and in Derogation of FE's Right of First Refusal

The procedures proposed by Kahala at Appendix A attached to Kahala's Motion To Confirm depart from the provisions of the Articles of Incorporation in significant respects:

1.    Kahala proposes that FE must exercise its right of refusal by giving notice at the confirmation hearing. Under the Articles of Incorporation, FE is entitled to fifteen (15) days notice of the price and terms by certified mail.

2.    Kahala proposes that FE's exercise of its right of first refusal be a matter of record and served upon all parties. Under the Articles of Incorporation, there is no such publication requirement.

3.    Kahala proposes to limit FE's exercise of its right of first refusal pursuant to the restrictions set forth in Haw.Rev.Stat. § 414-111, and Haw.Rev.Stat. § 412, and any other restrictions contained in "applicable law."

Yet, Kahala has declined to say in what respect it believes that "applicable law" restricts the right of first refusal. Obviously all parties must comply with applicable law, so what beyond that does Kahala really mean? If Kahala contends that there is some applicable restriction, it should be addressed directly. Otherwise, this reference to "applicable law" unnecessarily clouds FE's right of first refusal with doubt and innuendo by injecting ambiguity into the Articles of Incorporation.

4.    Kahala proposes to require FE to exercise its right of first refusal with respect to not less than all (100%) of either Lot 1, and Lot 2 and/or Lot 3. Under the Articles of Incorporation, FE is entitled to accept the offer and to acquire the shares offered "in whole or in part."

5.    Kahala proposes to require FE's shareholders to exercise their rights of first refusal with respect to not less than all (100%) of either Lot 1, Lot 2 and/or Lot 3. Under the Articles of Incorporation, each shareholder is entitled to be offered the portion of the stock not purchased by FE in proportion to their individual holdings.

6.    Kahala proposes that if FE or its shareholders do not exercise their right of first refusal at the confirmation hearing, the Court should thereafter declare the winning bidder and have the Court vest ownership of the shares in the winning bidder indefeasibly, and order FE to register the shares accordingly. This

mistakes the fundamental nature of what the winning bidder will have purchased. It will have purchased the shares <u>subject</u> <u>however</u>, to FE's right of first refusal.

       7.     Kahala proposes that the exercise of the right of first refusal be closed the same day it is exercised, in immediately available funds, and adds that all time limits will be strictly enforced. No such provision or any time limit appears in the Articles of Incorporation. The Articles of Incorporation provide that FE and then the shareholders be given "15 days to accept" the offer at the same terms. They do not say or mean "accept <u>and close the transaction</u>" within 15 days. (Emphasis added). Since the Articles are silent as to when the transaction should close, the presumption is that closing should take place within a reasonable time.

       Kahala offers no justification for failing to comply with the Articles of Incorporation. FE (and its shareholders) are entitled to that much. <u>See</u> <u>Clark v. Airavada Corp.</u>, 12 F Supp 1114 (D.Nev. 1998). Therein, the creditor made a personal loan of $21,500 to a shareholder of a corporation. The shareholder pledged his shares as security for the loan. The shareholder defaulted and the creditor foreclosed on the shares. The creditor sent notice to the corporation that the stock was to be sold at public auction, whereat the creditor ultimately obtained the shares by $5,000 credit bid. The creditor then brought suit against the corporation to have the shares re-issued in his name. The corporation claimed that its shareholders had a right of first refusal under its Articles of Incorporation. The

Court found that the stock was subject to a valid transfer restriction, and the notice of the public auction delivered to the corporation by the creditor did not comply with the specific right of first refusal procedures set forth in the corporation's Articles of Incorporation. Id. at 1120. As such, the shares still remained subject to the right of first refusal and the creditor was not entitled to a re-issuance of the stock certificates.

Moreover, Kahala's actions leading up to this motion raise questions as to the sincerity of its intentions. Recognizing that undersigned counsel came into this matter at the "eleventh-hour", Kahala promptly filed an ex parte motion to shorten time to hear this motion. This court found no valid basis for the ex parte motion, and thus denied it.

Kahala has thus far also refused to cooperate with FE's repeated requests for information. FE served a First Request for Production of Documents (hereinafter "First Request to Kahala") on December 26, 2006. The First Request to Kahala sought, *inter alia*, documents and information related to the price of the Fong family shares at issue in the instant case. Kahala's Response to Defendant's First Request to Kahala is due by January 25, 2007. Specifically, the document requested was a "Sale and Assignment Agreement" in which Kahala bought Harwood's interest in the Fong family shares for a heretofore undisclosed price, but which, upon information and belief, was significantly lower than the aggregate

average price of $1,300 per share that Kahala would later credit bid at the November 1, 2006 auction.

On January 5, 2007, via written correspondence, FE requested that Kahala make the requested information available as soon as possible since the information related to the fair share price and the price paid by Kahala to Harwood was information that should have been readily available within Kahala's files. On January 9, 2007, FE renewed its request to Kahala that the requested information be made available as soon as possible, but to date, Kahala has yet to even respond.

Further, there is a great disparity between the price per share paid by Kahala and the price at which it seeks to have FE exercise its right of first refusal. Upon information and belief, the September 1, 2006 Harwood-Kahala transaction was consummated for a price significantly lower than the aggregate average price of $1,300 per share that Kahala would later credit bid at the November 1, 2006 auction. At the November 1, 2006 auction conducted by Commissioner Jay T. Suemori, Kahala was the sole bidder, and bid as follows:

> Lot #1: ($1,097,460 for 1,092 Shares) = $1,005 per share;
>
> Lot #2: ($1,148,137.60 for 630 Shares) = $1,823 per share; and
>
> Lot #3: ($307,889.34 for 241 Shares) = $1,278 per share.

See Commissioner's Report at page 4.

In the aggregate, the average amount bid by Kahala per share is approximately $1,300 per share ($2,553,486.94 ÷ 1963 Shares = $1,300), which upon information and belief is considerably more than the price per share paid by Kahala to Harwood in the first place.  In reviewing the difference in price, it should be patently obvious that Kahala is attempting to conduct a "greenmail" scheme against FE; that is, purchasing enough stock in a company to threaten a hostile takeover and then selling the stock back to the company at an inflated price.[1]

## III.    CONCLUSION.

For the reasons discussed above and under the authority cited, Defendant FE respectfully requests that this Court deny Plaintiff's Motion to the extent that such a sale infringes upon FE's right of first refusal.  FE further requests that this Court recognize that FE's right of first refusal, entitles FE to purchase the Fong family shares at the same price as the transaction between Kahala and Harwood, which upon information and belief is significantly lower than the aggregate $1,300 per share bid by Kahala at the November 1, 2006 auction, and make such other and further orders as the Court deems necessary.

---

[1] See Black's Law Dictionary, Seventh Edition (1999) at 709.

DATED: Honolulu, Hawaii, _JAN 1 9 2007_____

                      Respectfully submitted,

                      REUBEN S.F. WONG
                      DELWYN H.W. WONG
                      COLETTE L. HONDA
                      Attorneys for Defendant
                       Finance Enterprises, Ltd.

22