LYONS, BRANDT, COOK & HIRAMATSU
ATTORNEYS AT LAW
A LAW CORPORATION

GEORGE W. BRANDT #1181
BEVERLY LYNNE K. HIRAMATSU #1772
841 Bishop Street, Suite 1800
Honolulu, Hawaii 96813
Phone: (808) 524-7030
Facsimile: (808) 533-3011
E-mail: gbrandt@lbchlaw.com
       bhiramatsu@lbchlaw.com

Attorneys for Plaintiff
N. HARWOOD STREET PARTNERS I, L.P.

ORIGINAL

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

FEB 3 2003

at 1 o'clock and 49 min. P M.
WALTER A. Y. H. CHINN, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| N. HARWOOD STREET PARTNERS I, L.P., a Delaware limited partnership,<br><br>    Plaintiff,<br><br>vs.<br><br>HIRAM LEONG FONG, ALSO KNOWN AS HIRAM L. FONG AND HIRAM L. FONG, SR., INDIVIDUALLY AND AS TRUSTEE OF THE HIRAM LEONG FONG REVOCABLE TRUST DATED 3/17/93; RODNEY LEONG FONG, ALSO KNOWN AS RODNEY L. FONG AND RODNEY FONG, INDIVIDUALLY AND AS TRUSTEE FOR CHELSEA TREE FONG, | CIVIL NO. CV 02 00383 HG-BMK<br>(CONTRACT)<br><br>AMENDED COMPLAINT; EXHIBITS "1" THROUGH "40" SUMMONS; CERTIFICATE OF SERVICE |

EXHIBIT " 8 "

95.  Under the terms of Fong Sr.'s Note, Fong Sr. is responsible for all costs, including reasonable attorneys' fees, with interest thereon, incurred by Plaintiff in this matter.

96.  As set forth in Count I above, there is now due and owing from Defendant Fong Sr. to Plaintiff under Fong Sr.'s Note, the principal balance plus interest, late fees, reasonable attorneys' fees and costs to the date of judgment, and interest thereafter pursuant to Hawaii Revised Statutes §478-3, as amended, as set forth in Count I above.

97.  By reason of the facts set forth above, Plaintiff may hold Ellyn Fong, individually, liable pursuant to the terms of the Ellyn Fong Guaranty, and Plaintiff is entitled to judgment against Ellyn Fong, individually, for the amounts due under Fong Sr.'s Note and the Guaranty as set forth in Count I, above.

COUNT V
(Guaranty)
(As to Defendant Fong Sr.)

98.  Plaintiff reasserts, realleges, and incorporates by reference paragraphs 1 through 44, 48, and 60 through 73 above as though fully set forth herein.

99.  For value received and to induce the Bank to make that that certain loan to Rodney Fong and Patsy Fong, evidenced by Rodney's Note, Fong Sr., made, executed, and delivered to Bank that certain Consumer Guaranty ("Fong

Sr.'s Guaranty") to guarantee and promise to pay Bank any and all indebtedness of Rodney Fong and Patsy Fong to Bank including all principal, plus interest, collection costs, attorneys' fees and other legal expenses. A true and correct copy of Fong Sr.'s Guaranty is attached hereto as Exhibit "39" and made a part hereof.

100. Rodney Fong and Patsy Fong are now in default under the terms of Rodney's Note and have breached their covenants to pay the sums due on said note at the times they became due and payable.

101. Although Plaintiff has made demand upon Rodney Fong and Patsy Fong for payment of the sums due, Rodney Fong and Patsy Fong have continued to fail, neglect, and/or refuse to pay the same.

102. Under the terms of Rodney's Note, Rodney Fong and Patsy Fong are responsible for all costs, including reasonable attorneys' fees, with interest thereon, incurred by Plaintiff in this matter.

103. As set forth in Count II above, there is now due and owing from Rodney Fong and Patsy Fong to Plaintiff, the principal balances due under Rodney's Note, plus interest, late charges, reasonable attorneys' fees and costs to the date of judgment, and interest thereafter pursuant to Hawaii Revised Statutes §478-3, as amended, as set forth in Count II above.

104. By reason of the facts set forth above, Plaintiff may hold Fong Sr. liable pursuant to the terms of Fong Sr.'s Guaranty, and Plaintiff is entitled to

judgment against Fong Sr. for the amounts due under Rodney's Note as set forth in Count II above.

## COUNT VI
(Guaranty)
(As to Defendant Trustee Ellyn Fong)

105.  Plaintiff reasserts, realleges, and incorporates by reference paragraphs 1 through 90 and 98 through 104 above as though fully set forth herein.

106.  For value received and to induce the Bank to make loans to Fong Sr., Trustee Ellyn Fong made, executed, and delivered to Bank that certain Commercial Guaranty (the "Trustee Ellyn Fong's Guaranty") to guarantee and promise to pay Bank any and all indebtedness of Fong Sr. to Bank including all principal, plus interest, collection costs, attorneys' fees and other legal expenses. A true and correct copy of the Trustee Ellyn Fong's Guaranty is attached hereto as Exhibit "40" and made a part hereof.

107.  Fong Sr. is now in default under the terms of Fong Sr.'s Note, the '94 Note and under his guaranty of Rodney's Note and has breached his covenants to pay the sums due on said notes at the times they became due and payable.

108.  Although Plaintiff has made demand upon Fong Sr. for payment of the sums due, Fong Sr. has continued to fail, neglect, and/or refuse to pay the same.

109. Under the terms of Fong Sr.'s Note, the '94 Note and Fong Sr.'s guaranty of Rodney's Note, Fong Sr. is responsible for all costs, including reasonable attorneys' fees, with interest thereon, incurred by Plaintiff in this matter.

110. As set forth in Counts I, II and III and V above, there is now due and owing from Defendant Fong Sr. to Plaintiff, the principal balances due under Fong Sr.'s Note, the '94 Note and Fong Sr.'s guaranty of Rodney's Note, plus interest, late fees, reasonable attorneys' fees and costs to the date of judgment, and interest thereafter pursuant to Hawaii Revised Statutes §478-3, as amended, as set forth in Counts I, II, III and V above.

111. By reason of the facts set forth above, Plaintiff may hold Trustee Ellyn Fong liable pursuant to the terms of Trustee Ellyn Fong's Guaranty, and Plaintiff is entitled to judgment against Trustee Ellyn Fong for the amounts due under Fong Sr.'s Note, the '94 Note and Fong Sr.'s Guaranty as set forth in Counts I, II, III and V above.

WHEREFORE, Plaintiff prays as follows:

A. As to Count I, that upon a hearing being had hereon and the Court having ascertained the total amount due and owing to Plaintiff up to the time of judgment pursuant to Fong Sr.'s Note, which amounts shall include all principal, interest, costs, expenses, attorneys' fees and late fees, this Court make and enter its judgment as follows:

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $590,000.00 | 01-26-1994 | 01-26-1995 | 01-976540 | T53C6B | 08 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

---

**Principal Amount:** $590,000.00   **Initial Rate:** 7.000%   **Date of Note:** January 26, 1994

**PROMISE TO PAY.** I promise to pay to Bank of Honolulu ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Ninety Thousand & 00/100 Dollars ($590,000.00), together with interest on the unpaid principal balance from January 26, 1994, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in 11 regular payments of $4,575.22 each and one irregular last payment estimated at $580,518.85. My first payment is due February 26, 1994, and all subsequent payments are due on the same day of each month after that. My final payment due January 26, 1995, will be for all principal and all accrued interest not yet paid. Payments include principal and interest. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the BANK OF HONOLULU PREFERRED BASE RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. I understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. **The Index currently is 6.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 7.000% per annum.** NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Whenever increases occur in the interest rate, Lender, at its option, may do one or more of the following: (a) increase my payments to ensure my loan will pay off by its original final maturity date, (b) increase my payments to cover accruing interest, (c) increase the number of my payments, and (d) continue my payments at the same amount and increase my final payment.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in me making fewer payments.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment.

**DEFAULT.** I will be in default if any of the following happens: (a) I fail to make any payment when due. (b) I break any promise I have made to Lender, or I fail to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note, or in any other agreement or loan I have with Lender. (c) Any representation or statement made or furnished to Lender by me or on my behalf is false or misleading in any material respect. (d) I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of my property on or in which Lender has a lien or security interest. This includes a garnishment of any of my accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then I will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if I do not pay. I also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Note shall be governed by and construed in accordance with the laws of the State of Hawaii.

**RIGHT OF SETOFF.** I grant to Lender a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to Lender all my right, title and interest in and to, my accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts I may open in the future, excluding however all IRA, Keogh, and trust accounts. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

**PRIOR TO SIGNING THIS NOTE, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I AGREE TO THE TERMS OF THE NOTE AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.**

BORROWER:

X _/s/ Hiram L. Fong_
HIRAM L. FONG

EXHIBIT " 1 "

---

Variable Rate. Balloon.    LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.16e (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-D20 E3.16d 01732846.LN]

Pay to the order of DAP FINANCIAL MANAGEMENT COMPANY, INC., without recourse; Federal Deposit Insurance Corporation as Receiver for Bank of Honolulu, Honolulu, Hawaii

*(CANCELLED CANCELLED CANCELLED)*

_____
Richard K. Salmon, Attorney in Fact

Pay to the order of N. HARWOOD STREET PARTNERS I, L.P., without recourse, Federal Deposit Insurance Corporation as Receiver for Bank of Honolulu, Honolulu, Hawaii

_____
Richard K. Salmon, Attorney in Fact

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $555,000.00 | 12-14-1993 | 12-14-1994 | 01-976478 | 155C6B | 08 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** RODNEY L. FONG
PATSY N. FONG
47-351 PULAMA ROAD
KANEOHE, HI 96744

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Principal Amount:** $555,000.00     **Initial Rate:** 7.500%     **Date of Note:** December 14, 1993

**PROMISE TO PAY.** I promise to pay to Bank of Honolulu ("Lender"), or order, in lawful money of the United States of America, the principal amount of Five Hundred Fifty Five Thousand & 00/100 Dollars ($555,000.00), together with interest on the unpaid principal balance from December 14, 1993, until paid in full.

**PAYMENT.** Subject to any payment changes resulting from changes in the Index, I will pay this loan in 11 regular payments of $4,072.39 each and one irregular last payment estimated at $551,572.18. My first payment is due January 14, 1994, and all subsequent payments are due on the same day of each month after that. My final payment due December 14, 1994, will be for all principal and all accrued interest not yet paid. Payments include principal and interest. I will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an Index which is the BANK OF HONOLULU PREFERRED BASE RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying me. Lender will tell me the current Index rate upon my request. I understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 6.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.500 percentage points over the Index, resulting in an initial rate of 7.500% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law. Unless waived by Lender, any increase in the interest rate will increase the amount of my final payment.

**PREPAYMENT.** I may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve me of my obligation to continue to make payments under the payment schedule. Rather, they will reduce the principal balance due and may result in me making fewer payments.

**LATE CHARGE.** If a payment is 10 days or more late, I will be charged 5.000% of the regularly scheduled payment.

**DEFAULT.** I will be in default if any of the following happens: (a) I fail to make any payment when due. (b) I break any promise I have made to Lender, or I fail to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note, or in any other agreement or loan I have with Lender. (c) Any representation or statement made or furnished to Lender by me or on my behalf is false or misleading in any material respect. (d) I die or become insolvent, a receiver is appointed for any part of my property, I make an assignment for the benefit of creditors, or any proceeding is commenced either by me or against me under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of my property on or in which Lender has a lien or security interest. This includes a garnishment of any of my accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then I will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if I do not pay. I also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, I also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Note shall be governed by and construed in accordance with the laws of the State of Hawaii.

**RIGHT OF SETOFF.** I grant to Lender a contractual possessory security interest in, and hereby assign, convey, deliver, pledge, and transfer to Lender all my right, title and interest in and to, my accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts I may open in the future, excluding however all IRA, Keogh, and trust accounts. I authorize Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. I and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made. The obligations under this Note are joint and several. This means that the words "I", "me", and "my" mean each and all of the persons signing below.

PRIOR TO SIGNING THIS NOTE, I, AND EACH OF US, READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. I, AND EACH OF US, AGREE TO THE TERMS OF THE NOTE AND ACKNOWLEDGE RECEIPT OF A COMPLETED COPY OF THE NOTE.

**BORROWER:**

X _____   X _____
   RODNEY L. FONG                       PATSY N. FONG

Variable Rate. Balloon.     LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.16d (c) 1993 CFI ProServices, Inc. All rights reserved. [HI-D20 01976478.LN]

Pay to the order of DAP FINANCIAL MANAGEMENT COMPANY, INC., without recourse, Federal Deposit Insurance Corporation as Receiver for Bank of Honolulu, Honolulu, Hawaii

CANCELLED CANCELLED CANCELLED

_____
Richard K. Salmon, Attorney in Fact


Pay to the order of N. HARWOOD STREET PARTNERS I, L.P., without recourse, Federal Deposit Insurance Corporation as Receiver for Bank of Honolulu, Honolulu, Hawaii

_____
Richard K. Salmon, Attorney in Fact

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $200,000.00 | 01-27-1994 | 01-31-1995 | 01-735004 | T33C9B | 08 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG, SR.
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Principal Amount:** $200,000.00      **Initial Rate:** 7.000%      **Date of Note:** January 27, 1994

**PROMISE TO PAY.** HIRAM L. FONG, SR. ("Borrower") promises to pay to Bank of Honolulu ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 31, 1995. In addition, Borrower will pay regular quarterly payments of accrued unpaid interest beginning April 1, 1994, and all subsequent interest payments are due on the same day of each quarter after that. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the BANK OF HONOLULU PREFERRED BASE RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. **The Index currently is 6.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 7.000% per annum.** NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, they will reduce the principal balance due.

**LATE CHARGE.** If a payment is **10 days or more late,** Borrower will be charged **5.000% of the regularly scheduled payment.**

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect. (d) Borrower dies or becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. **This Note has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Note shall be governed by and construed in accordance with the laws of the State of Hawaii.**

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA, Keogh, and trust accounts. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized as provided in this paragraph to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: HIRAM L. FONG, SR. **Each advance shall be for the sum of at least Five Thousand and No/100 Dollars ($,5000.00). Each advance will be reflected on a seperate promissory note that may be coterminus, but may not exceed the maturity of this Note.** Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (d) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

EXHIBIT "27"

| 01-27-1994 | PROMISSORY NOTE | Page 2 |
|---|---|---|
| Loan No 01-735004 | (Continued) | |

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

X _____
HIRAM L. FONG, SR.

Variable Rate. Line of Credit.       LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.19 (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-D20 HFONG.LN]

# COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $200,000.00 | 01-27-1994 | 01-31-1995 | | T33C9B | 09 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG, SR.
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Grantor:** ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93
1102 ALEWA DRIVE
HONOLULU, HI 96817

THIS COMMERCIAL PLEDGE AGREEMENT is entered into among HIRAM L. FONG, SR. (referred to below as "Borrower"); ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93 (referred to below as "Grantor"); and Bank of Honolulu (referred to below as "Lender").

GRANT OF SECURITY INTEREST. For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

DEFINITIONS. The following words shall have the following meanings when used in this Agreement:

Agreement. The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

Borrower. The word "Borrower" means each and every person or entity signing the Note, including without limitation HIRAM L. FONG, SR..

Collateral. The word "Collateral" means the following specifically described property, which Grantor has delivered or agrees to deliver (or cause to be delivered) immediately to Lender, together with all Income and Proceeds as described below:

241.000 shares of Finance Enterprises, Ltd., Certificated No. 238, Dated August 12, 1993.

In addition, the word "Collateral" includes all property of Grantor, in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether now or hereafter existing and whether tangible or intangible in character, including without limitation each of the following:

(a) All property to which Lender acquires title or documents of title.

(b) All property assigned to Lender.

(c) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

(d) All records relating to any of the property described in this Collateral section, whether in the form of a writing, microfilm, microfiche, or electronic media.

Event of Default. The words "Event of Default" mean and include any of the Events of Default set forth below in the section titled "Events of Default."

Grantor. The word "Grantor" means ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93. Any Grantor who signs this Agreement, but does not sign the Note, is signing this Agreement only to grant a security interest in Grantor's interest in the Collateral to Lender and is not personally liable under the Note except as otherwise provided by contract or law (e.g., personal liability under a guaranty or as a surety).

Guarantor. The word "Guarantor" means and includes without limitation, each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

Income and Proceeds. The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, distributions, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, contract rights, documents, instruments, chattel paper, and general intangibles.

Indebtedness. The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Borrower or Grantor is responsible under this Agreement or under any of the Related Documents.

Lender. The word "Lender" means Bank of Honolulu, its successors and assigns.

Note. The word "Note" means the note or credit agreement dated January 27, 1994, in the principal amount of $200,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

Obligor. The word "Obligor" means and includes without limitation any and all persons or entities obligated to pay money or to perform some other act under the Collateral.

Related Documents. The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

BORROWER'S WAIVERS AND RESPONSIBILITIES. Except as otherwise required under this Agreement or by applicable law, (a) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (b) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (c) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

EXHIBIT " 29 "

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Agreement is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Grantor, Borrower, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (a) grant any extension of time for any payment, (b) grant any renewal, (c) permit any modification of payment terms or other terms, or (d) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Grantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Grantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Grantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

**RIGHT OF SETOFF.** Grantor hereby grants Lender a contractual possessory security interest in and hereby assigns, conveys, delivers, pledges, and transfers all of Grantor's right, title and interest in and to Grantor's accounts with Lender (whether checking, savings, or some other account), including all accounts held jointly with someone else and all accounts Grantor may open in the future, excluding however all IRA, Keogh, and trust accounts. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Binding Effect.** This Agreement is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms.

**No Further Assignment.** Grantor has not, and will not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements contained in the Collateral which are to be performed by Grantor, if any.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO COLLATERAL.** Lender may hold the Collateral until all the Indebtedness has been paid and satisfied and thereafter may deliver the Collateral to any Grantor. Lender shall have the following rights in addition to all other rights it may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including payment of any liens or claims against the Collateral. Lender may charge any cost incurred in so doing to Grantor.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (a) extend time for payment or other performance, (b) grant a renewal or change in terms or conditions, or (c) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender and whether or not the office or branch where the Indebtedness is created is aware of or relies upon the Collateral.

**Collection of Collateral.** Lender, at Lender's option may, but need not, collect directly from the Obligors on any of the Collateral all Income and Proceeds or other sums of money and other property due and to become due under the Collateral, and Grantor authorizes and directs the Obligors, if Lender exercises such option, to pay and deliver to Lender all Income and Proceeds and other sums of money and other property payable by the terms of the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any

| 01-27-1994 | COMMERCIAL PLEDGE AGREEMENT | Page 3 |
|---|---|---|
| Loan No | (Continued) | |

installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (a) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (b) preservation of rights against parties to the Collateral or against third persons, (c) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (d) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

**Default on Indebtedness.** Failure of Borrower to make any payment when due on the Indebtedness.

**Other Defaults.** Failure of Borrower or Grantor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or failure of Borrower to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

**False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or Grantor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower or Grantor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

**Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Borrower or Grantor's deposit accounts with Lender.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.

**Insecurity.** Lender, in good faith, deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

**Accelerate Indebtedness.** Declare all Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

**Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

**Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, or any of them, notice at least ten (10) days in advance of the time and place of any public sale, or of the date after which any private sale may be made. Grantor agrees that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor, or any of them, at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

**Register Securities.** Register any securities included in the Collateral in Lender's name and exercise any rights normally incident to the ownership of securities.

**Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws, notwithstanding any other provision of this or any other agreement. If, because of restrictions under such laws, Lender is or believes it is unable to sell the securities in an open market transaction, Grantor agrees that Lender shall have no obligation to delay sale until the securities can be registered, and may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction, and such a sale shall be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or state securities departments under state "Blue Sky" laws, or if Borrower or Grantor is an affiliate of the issuer of the securities, Borrower and Grantor agree that neither Grantor nor any member of Grantor's family will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

**Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

**Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as its attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

**Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

**Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, attorney fees as provided below, and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Borrower to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

**Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, Borrower and Grantor agree upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii.

**Attorneys' Fees; Expenses.** Borrower and Grantor agree to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Borrower and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower and Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Multiple Parties.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower or Grantor, notice to any Borrower or Grantor will constitute notice to all Borrower and Grantors. For notice purposes, Borrower or Grantor agrees to keep Lender informed at all times of Borrower or Grantor's current address(es).

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

BORROWER AND GRANTOR ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS PLEDGE AGREEMENT, AND BORROWER AND GRANTOR AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 27, 1994.

BORROWER:

X _____
HIRAM L. FONG, SR.


GRANTOR:

X _____
ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.17 (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-E60 HFONG.LN]

# CONSUMER GUARA\

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| | | | | T55C6B | 08 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** RODNEY L. FONG
PATSY N. FONG
47-351 PULAMA ROAD
KANEOHE, HI 96744

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Guarantor:** HIRAM L. FONG
1102 ALEWA DRIVE
HONOLULU, HI 96817

**AMOUNT OF GUARANTY.** This is a Guaranty of the Note, including without limitation the principal Note amount of Five Hundred Fifty Five Thousand & 00/100 Dollars ($555,000.00).

**GUARANTOR'S REPRESENTATIONS.** I know that Lender, from time to time, has loaned or may loan money to Borrower. I am making this Guaranty at the request of Borrower and not at Lender's request. I am making this guaranty of payment so that Lender will loan money to Borrower or agree to other requests of Borrower. I agree that Lender's willingness to make the loan to Borrower is enough consideration for my giving of this Guaranty. No representations or agreements of any kind have been made to me which would limit or qualify in any way the terms of this Guaranty.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

**Borrower.** The word "Borrower" means RODNEY L. FONG and PATSY N. FONG, together with every other person or entity signing the Note.

**Guaranty.** The word "Guaranty" means this Guaranty between Lender and me dated December 14, 1993.

**Lender.** The word "Lender" means Bank of Honolulu, its successors or assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Note.** The word "Note" means the promissory note or credit agreement executed by Borrower: in the principal amount of $555,000.00 dated December 14, 1993, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the note or credit agreement due on December 14, 1994.

**GUARANTY.** I guarantee payment to Lender, in legal tender, of all amounts due now or later on Borrower's Note to Lender. My guaranty covers the principal, plus all interest, all collection costs, attorneys' fees, and other legal expenses, that may become due from Borrower, or either or any of them, to Lender in connection with the Note.

**GUARANTOR'S AUTHORIZATION TO LENDER.** I agree that Lender may do any or all of the following things, without telling me and without in any way lessening my promise to pay Lender: **(a) Extensions to Pay.** Lender may repeatedly grant Borrower more time to pay, and extensions may be for longer than the original loan term. **(b) Renewals.** Lender may renew any notes or agreements with Borrower. **(c) Releases.** Lender may release any property or guaranty that secures any amounts due from Borrower. **(d) Other Actions.** Lender may take any other action under the terms of any agreement Lender has with Borrower or with any other guarantor. **(e) Increase Interest Rate.** Lender may increase or otherwise change the interest rate on any amounts owed to Lender. **(f) Change Loan Terms.** Lender may otherwise alter or amend the terms of Borrower's debt to Lender. **(g) Sell the Loan.** Lender may sell, transfer or grant participations in all or any part of the Note, and this Guaranty may be transferred in whole or in part to the purchaser. **(h) Loan More Money.** Lender may loan more money to Borrower and make new advances to Borrower.

**RIGHT OF SETOFF.** I grant to Lender a contractual possessory security interest in, and hereby assign, convey, deliver, pledge and transfer to Lender, all my right, title and interest in and to all my accounts with Lender (whether checking, savings, or some other account). This includes all accounts I hold jointly with someone else and all accounts I may open in the future. However, this does not include any IRA, Keogh or trust accounts. I authorize Lender, to the extent permitted by applicable law, to hold these funds if there is a default or if Lender in good faith deems itself insecure, and Lender may apply the funds in these accounts to pay what I owe under the terms of this Guaranty.

**GUARANTOR'S WAIVERS.** I agree that Lender will have the following rights, and that I am giving up the following rights: **(a) Information about Borrower.** Lender does not have to tell me about any defaults of Borrower or any other information it now knows or later learns about Borrower's financial condition. I am responsible for being and keeping myself informed about Borrower's financial condition and about all other matters which may affect the risk that Borrower will not be able to pay the amounts I am guaranteeing under this Guaranty. **(b) Direct Guaranty.** If Borrower is in default under any agreement between Borrower and Lender, Lender may collect the amounts owed by Borrower directly from me. I will have to pay such amounts even if Lender does not try to collect from Borrower or from any other guarantor or even if Lender does not foreclose on any security. Any delay of Lender in collecting from Borrower or pursuing any other remedy will not change my responsibility to pay Lender under this Guaranty. This will be true even if I cannot legally pursue the remedy myself. **(c) Lender Paid First.** If Borrower owes me money, I agree Lender will be paid before I am. In legal terms, this means Borrower's debts to me are subordinated to Borrower's debts to Lender. **(d) Continuing Liability.** I waive any defense that arises because of any disability or any other defense of Borrower or because Borrower is no longer liable to Lender for any reason. I specifically waive any rights or defenses under any law, including any "one action" and "anti-deficiency" law which may prevent Lender from bringing a deficiency action against me after bringing any foreclosure action, either judicially or by exercise of a power of sale. **(e) Counterclaims.** I further waive and, to the extent not prohibited by law, agree not to assert or claim at any time any deduction to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, or similar right, whether such claim or right may be asserted by Borrower, by me, or by both of us. **(f) Impairment of Collateral.** I also waive any right to claim a discharge of my Guaranty on the basis of unjustifiable impairment of any Collateral securing any amounts due from Borrower. This includes without limitation waiver of any right to require Lender to perfect or maintain perfection of any security interest in any such Collateral. **(g) Notices.** I waive any requirement of Lender to give me notice of the terms, time, and place of any public or private sale of any collateral securing the Note or to comply with any other applicable provisions of the Uniform Commercial Code. **(h) Other Waivers.** I understand Lender will not give up any of its rights under this Guaranty unless it does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of its rights, that does not mean I will not have to comply with the other provisions of this Guaranty. I also understand that if Lender does consent to a request, that does not mean that I will not have to get Lender's consent again if the situation happens again. I further understand that just because Lender consents to one or more of my requests, that does not mean Lender will be required to consent to any of my future requests. I waive presentment, demand for payment, protest, and notice of dishonor.

**NATURE OF GUARANTY.** Lender does not have to accept this Guaranty to make it effective. It will be effective when I sign below and will continue in effect until all amounts I have guaranteed or otherwise have agreed to pay under this Guaranty have been paid in full.

**GUARANTOR'S FINANCIAL STATEMENTS.** I hereby represent and promise to Lender that (a) the most recent financial statements I have given to Lender are true and correct in all respects, (b) they fairly present my financial condition as of the date shown on the statements, and (c) no material adverse change has occurred in my financial condition since that date.

EXHIBIT " 39 "

| 12-14-1993 | CONSUMER GUARAN. | |
|---|---|---|
| Loan No 01-976478 | (Continued) | Page 2 |

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments and Interpretation.** (a) What is written in this Guaranty is my entire agreement with Lender. This Guaranty may not be changed except by another written agreement between us. (b) If more than one person signs below, our obligations are joint and several. This means that the words "I," "me," and "my" mean each and every person or entity signing this Guaranty, and that, if Lender brings a lawsuit, Lender may sue any one or more of us. I also understand Lender need not sue Borrower first, and that Borrower need not be joined in any lawsuit. (c) The names given to paragraphs or sections in this Guaranty are for convenience purposes only. They are not to be used to interpret or define the provisions of this Guaranty. (d) I agree that this Guaranty is the best evidence of my agreements with Lender. If a court finds that any provision of this Guaranty is not valid or should not be enforced, that fact by itself will not mean that the rest of this Guaranty will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Guaranty even if a provision of this Guaranty may be found to be invalid or unenforceable.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, I agree upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Guaranty shall be governed by and construed in accordance with the laws of the State of Hawaii.

**Attorneys' Fees; Expenses.** In addition to the amount of this Guaranty set forth above, if Lender pays money to someone else to help collect on my Guaranty, I will pay that amount as well. This amount includes Lender's legal expenses and attorneys' fees, whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. I will also pay any court costs, in addition to all other sums provided by law.

**Notices.** I understand that all notices when required to be given under this Guaranty, whether from Lender to me or from me to Lender, must be given in writing. Notices will not be effective until actually delivered or when deposited with a nationally recognized overnight courier or when deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any person may change its address for notices under this Guaranty by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. I agree that, to the extent permitted by law, if there is more than one person signing this Guaranty, Lender may give notice to any one of us and that will be considered as giving notice to all of us unless the law requires notice to all signers. It will be our responsibility to tell the others of the notice from Lender. For this purpose, I agree to keep Lender informed at all times of my current address.

PRIOR TO SIGNING THIS GUARANTY, I READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS GUARANTY, INCLUDING THE NOTICE TO COSIGNER SET FORTH BELOW IN THIS DOCUMENT. IN ADDITION, I UNDERSTAND THAT THIS GUARANTY IS EFFECTIVE UPON MY SIGNING THIS AGREEMENT AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED AS SET FORTH IN THE SECTION TITLED "NATURE OF GUARANTY". I AGREE TO ALL THE TERMS AND CONDITIONS OF THIS GUARANTY. THIS GUARANTY IS DATED DECEMBER 14, 1993.

GUARANTOR:

X _____
HIRAM L. FONG

---

## NOTICE TO COSIGNER

You are being asked to guarantee this debt. Think carefully before you do. If Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from Borrower. The creditor can use the same collection methods against you that can be used against Borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of YOUR credit record.

This notice is not the contract that makes you liable for the debt.

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.16d (c) 1993 CFI ProServices, Inc. All rights reserved. [HI-E10 01976478.LN]

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| | | | | T33C9B | 09 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG, SR.
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Guarantor:** ELLYN L. FONG, Trustee of the Ellyn Lo Fong Revocable Trust dated 03/24/93
1102 ALEWA DRIVE
HONOLULU, HI 96817

**AMOUNT OF GUARANTY.** The amount of this Guaranty is Unlimited.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, ELLYN L. FONG, Trustee of the Ellyn Lo Fong Revocable Trust dated 03/24/93 ("Guarantor") absolutely and unconditionally guarantees and promises to pay to Bank of Honolulu ("Lender") or its order, in legal tender of the United States of America, the Indebtedness (as that term is defined below) of HIRAM L. FONG, SR. ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty:

  **Borrower.** The word "Borrower" means HIRAM L. FONG, SR..

  **Guarantor.** The word "Guarantor" means ELLYN L. FONG, Trustee of the Ellyn Lo Fong Revocable Trust dated 03/24/93.

  **Guaranty.** The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated January 27, 1994.

  **Indebtedness.** The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such Indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the Indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the Indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

  **Lender.** The word "Lender" means Bank of Honolulu, its successors and assigns.

  **Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before receipt by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be delivered to Lender at the address of Lender listed above or such other place as Lender may designate in writing. This Guaranty may be revoked only with respect to Indebtedness incurred or contracted by Borrower, or acquired by Lender thirty (30) days or more after the date on which written notice of revocation is actually received by Lender. No notice of revocation hereof shall be effective as to any Indebtedness: (a) existing at the date of receipt of such notice; (b) incurred or contracted by Borrower, or acquired by Lender, within thirty (30) days after receipt of such notice; (c) now existing or hereafter created pursuant to or evidenced by a loan agreement or commitment under which Borrower is or may become obligated to Lender; or (d) renewals, extensions, consolidations, substitutions, and refinancings of the foregoing. Any revocation of this Guaranty by less than all guarantors of the Indebtedness shall not affect the liability hereunder of the remaining guarantors as to any present or future transactions or Indebtedness. The death of any guarantor of the Indebtedness shall not operate as a revocation of liability hereunder of the estate of any such guarantor as to transactions entered into or Indebtedness created subsequent to such death until actual receipt by Lender of written notice of the death of such guarantor. Guarantor waives notice of revocation given by any other guarantor of the Indebtedness. Any payment by Guarantor with respect to the Indebtedness guaranteed shall not reduce the maximum obligation hereunder, unless written notice to that effect be actually received by Lender at or prior to the time of such payment. This Guaranty shall bind the estate of Guarantor as to Indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the Indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of Indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of Indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed Indebtedness remains unpaid and even though the Indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment or other terms of the Indebtedness or any part of the Indebtedness, including increases and decreases of the rate of interest on the Indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the Indebtedness, and exchange, enforce, waive, fall or decide not to perfect, and release any such security, with or without

EXHIBIT "40"

the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the Indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the Indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (d) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; (e) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information provided to Lender is true and correct in all material respects and fairly presents the financial condition of Guarantor as of the dates thereof, and no material adverse change has occurred in the financial condition of Guarantor since the date of the financial statements; and (f) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the Indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser, or other guarantor in connection with the Indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Guarantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Guarantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Guarantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

| 01-27-1994 | COMMERCIAL GUARAN. | Page 3 |
|---|---|---|
| Loan No | (Continued) | |

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, State of Hawaii. This Guaranty shall be governed by and construed in accordance with the laws of the State of Hawaii.

**Attorneys' Fees; Expenses.** Guarantor agrees to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Guaranty. Lender may pay someone else to help enforce this Guaranty, and Guarantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Guarantor also shall pay all court costs and such additional fees as may be directed by the court.

**Notices.** Except for revocation notices by Guarantor, all notices required to be given by either party to the other under this Guaranty shall be in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED JANUARY 27, 1994.

GUARANTOR:

X _Ellyn Fong_
ELLYN L. FONG, Trustee of the Ellyn Lo Fong Revocable Trust dated 03/24/93

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.17 (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-E20 HFONG.LN]