McCORRISTON MILLER MUKAI MacKINNON LLP

ROBERT G. KLEIN          #1192-0
CHRISTOPHER J. COLE      #5781-0
Five Waterfront Plaza, 4th Floor
500 Ala Moana Boulevard
Honolulu, Hawaii  96813
Telephone No.: 529-7300
Facsimile No.: 524-8293
E-mail:  klein@m4law.com/cole@m4law.com

Attorneys for Plaintiff
Kahala CCM Factors, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHALA CCM FACTORS, LLC,<br><br>                    Plaintiff,<br><br>        vs.<br><br>HIRAM L. FONG, ALSO KNOWN AS<br>HIRAM L. FONG, SR., et al.<br><br>                    Defendants.<br><br>_____ | CIVIL NO. CV-02-00383 SOM/BMK<br>(CONTRACT)<br><br>PLAINTIFF KAHALA CCM<br>FACTORS, LLC'S<br>MEMORANDUM IN<br>OPPOSITION TO DEFENDANT<br>FINANCE ENTERPRISES'<br>MOTION TO COMPEL<br>DISCOVERY FROM PLAINTIFF<br>KAHALA CCM FACTORS FILED<br>JANUARY 30, 2007;<br>DECLARATION OF ROBERT G.<br>KLEIN; EXHIBITS 1-2;<br>CERTIFICATE OF SERVICE<br><br>DATE:      February 2, 2007<br>TIME:      11:00 a.m.<br>JUDGE:     Barry M. Kurren |

PLAINTIFF KAHALA CCM FACTORS, LLC'S
MEMORANDUM IN OPPOSITION TO DEFENDANT FINANCE
ENTERPRISES' MOTION TO COMPEL DISCOVERY FROM
PLAINTIFF KAHALA CCM FACTORS FILED JANUARY 30, 2007

Plaintiff Kahala CCM Factors, LLC ("Plaintiff" or "Kahala") respectfully submits this brief in opposition to Defendant Finance Enterprises ("FE")'s Motion to Compel Discovery from Plaintiff Kahala CCM Factors, filed on January 30, 2007 (the "Motion to Compel"). FE seeks an order from this court to force Plaintiff to turn over documents revealing what consideration Plaintiff gave N. Harwood Street Partners I, L.P. ("N. Harwood") to acquire N. Harwood's claims against the defendant debtors in this case. FE does not need to know this information, and ought to know better than anybody what its own net worth is. Furthermore, the information is totally irrelevant to any claim or defense in this case, if indeed there are any left to be litigated. In any case, the information FE seeks constitute privileged and confidential trade secrets. Plaintiff requests that the court deny FE's Motion to Compel in its entirety and issue an appropriate protective order barring any further inquiry into such matters.

I.    BACKGROUND

In the early 1990's, Rodney Fong (Rodney) owned 1,092 shares, Hiram Fong, Jr. (Hiram, Jr.) owned 630 shares, and Ellyn Fong (Ellyn) owned 241 shares, respectively, of Finance Enterprises, Ltd. ("FE") stock. Hiram Fong, Sr. and Rodney borrowed money from the Bank of Honolulu on this stock, as follows:

| Date | Principal | Debtor | Guarantor(s) | Collateral |
|------|-----------|--------|--------------|------------|
| 12-14-93 | $555,000 | Rodney/Patsy | Hiram, Sr. Ellyn | Rodney's 1,092 + Ellyn's 241[1] |
| 1-26-94 | $590,000 | Hiram, Sr. | Ellyn | Hiram, Jr.'s 630 + Ellyn's 241 |
| 1-27-94 | $200,000 | Hiram, Sr. | Ellyn | Ellyn's 241 |

See Reply Memorandum filed by Plaintiff on its motion to confirm, on 1/26/07, and supporting papers, adopted herein by this reference (the "Reply"), at p. 2.

   Thereafter, the Bank of Honolulu failed, and the Federal Deposit Insurance Corporation (FDIC) succeeded to its claims as its receiver in liquidation. The FDIC, in turn, assigned the loans to N. Harwood in March, 2001. See Exhibit 6 to Reply, at p. 5, ¶10; Exhibit 7 to Reply, at p. 6, ¶15. Rodney and Hiram, Sr. defaulted on all three loans. See Ex. 6 to Reply, at ¶12; Ex. 7 to Reply, at ¶17. On January 9, 2002, N. Harwood sent notices of default. See Ex. 6 to Reply, at ¶13; Ex. 7 to Reply, at ¶18. On June 24, 2002, N. Harwood initiated this suit.

---

[1] Kahala asserts that Ellyn pledged her 241 shares of FE stock to secure not only Hiram, Sr.'s $200,000 contemporaneous loan (Ex. 27 to Am. Compl.), but also to secure Ellyn's own debt under "related documents", defined to include any guaranty "executed in connection with [the $200,000 note]." Ellyn signed the guaranty (id., Ex. 40) the same day that she signed her pledge agreement (id., Ex. 29) and Hiram, Sr. signed the note. In it, she guaranteed all of Hiram, Sr.'s past and future debt including the $590,000 promissory note he signed the day before (Id., Ex. 1) and his guaranty of Rodney's $555,000 loan signed six weeks earlier (Id., Ex. 39). The decrees (Exhibits 6 and 7, attached) establish that Ellyn's 241 shares secured Hiram, Sr.'s $200,000 loan, but did not adjudicate the pledge agreement's coverage of her guaranty.

Thereafter, Hiram, Sr. and Ellyn Fong, and Hiram, Jr. filed for bankruptcy. The bankruptcy court, on motion, lifted the automatic stays to permit N. Harwood to foreclose on all of the collateral, on condition that N. Harwood would not seek deficiency judgments. See Exhibits 10-11 to Reply. No one appealed.

N. Harwood then proceeded to move for summary judgment and obtained Rule 54(b)-certified foreclosure judgments against all Hiram, Sr., Ellyn, Hiram, Jr., and Rodney and Patsy Fong (collectively, the "Fongs") which liquidated the debt owed on the loans,[2] established the per diem interest rate to be applied from that point forward, appointed Jay T. Suemori as commissioner, and established foreclosure procedures pursuant to Hawaii statutory requirements and established custom. See Exhibits 6 and 7 to Reply. No one appealed either of these final foreclosure decrees. Then, Rodney and Patsy Fong filed for bankruptcy, and N. Harwood obtained a stay lift order as to them in April, 2006. See Exhibit 9 to Reply. No one has appealed that stay lift order, either.

On September 1, 2006, Plaintiff, in reliance on the foreclosure decrees and stay lift orders, acquired N. Harwood's claims against the Fongs. See Motion to Substitute; Declaration of Bradley E. Smith, filed herein on 09/28/06 and adopted herein by reference. The agreement by which N. Harwood's claims were acquired

---

[2] $536,753 on 12/14/93 loan to Rodney, as of January 13, 2004; $821,280 on 1/26/94 loan to Hiram, Sr., as of September 17, 2004; and $218,185 on 1/27/94 loan to Hiram, Sr., as of September 17, 2004.

contains strict confidentiality terms.  See Bradley E. Smith, attached hereto.

Kahala negotiated those confidentiality terms because the terms of the agreement,

and in particular the consideration set forth therein, has independent economic

value by virtue of remaining unknown to Kahala's competitors and other third

parties.  Id.  Pursuant to the confidentiality terms, N. Harwood recently objected to

efforts by FE to obtain this information from itself.  See Declaration of Robert G.

Klein, attached.

Commissioner Suemori scheduled a foreclosure auction sale for

November 1, 2006 at noon, and duly published notices in the Honolulu Advertiser.

See Exhibit 1 to the Motion to Confirm filed herein on 12/13/07, ("Motion to

Confirm"), which along with all supporting papers is adopted herein by reference.

Plaintiff was substituted into this action in place of N. Harwood, and separately

moved for an order specifying the sums it was entitled to credit-bid at the auction

under the Foreclosure Judgments.  See orders granting Kahala's motion to

substitute, filed 11/29/06 (Ex. 12 to Reply), and confirming credit bid amounts,

filed on 11/03/06 (Ex. 13 to Reply).

On November 1, 2006 at noon, the auction was held.  Trustee Kotoshirodo,

Trustee Loomis, Fong, Jr., FE, and Kahala, all attended through counsel or in

person.  See Declaration of Christopher J. Cole, attached to Reply.  Id.

Commissioner Suemori announced at FE's request that all sales were subject to

rights of refusal. Id. Kahala was the only bidder. Id. In making its bids, Kahala orally notified all present the credits it had estimated as of that date to be applied toward its bid. Id. No party, including FE, objected. Id.

II.     LEGAL ARGUMENT

    A.     Standards for Discovery

        1.     Only Discovery in Aid of Execution is Allowed

The foreclosure judgments (Exhibits 6 and 7 to the Reply) have been certified as final under Rule 54(b), and no party appealed. This case is nearly finished. There is no trial date. No claim or defense remains to be tried. Only execution of the foreclosure judgments remains to be done. Accordingly, Rule 26 discovery is no longer available. The only discovery arguably permissible at this juncture would be Rule 69 discovery in aid of execution. However, that discovery is only available to judgment creditors, such as Plaintiff, and does not permit discovery from parties other than the debtor and those who are closely affiliated with the debtor. FRCP 69(a).

        2.     Standards for Rule 26 Discovery, if Applicable

Even if Rule 26 discovery were available, the scope of that discovery is somewhat more limited than FE asserts. In support of its argument that the scope of discovery is broad and sweeping, FE cites an old, outdated treatise section and cases decided under the former Rule 26(b) as it existed pre-2000. See Motion to

Compel, at p. 3. "The 2000 amendments narrowed the scope of discovery to matters 'relevant to the claim or defense of any party.'" 6 Moore's Federal Practice & Proc. 3d Ed. § 26.41[2][a] (2006). "The limitation of the scope of party-controlled discovery is designed to control sweeping or contentious discovery [by] . . . focusing the attention of the parties and the court on the actual claims and defenses involved in the action." Id. at § 26.41[2][b].

To obtain a broader scope of discovery that is merely "relevant to the subject matter", FE has the burden of showing good cause. FE does not provide any showing of "good cause" that would be necessary for this court to order broader discovery, as is its burden. Instead, FE conclusorily argues that the information is relevant without saying how it is relevant or needed.

B.     The Information Sought is Irrelevant

Whatever standard applies, the discovery sought is irrelevant. As noted above, there are no claims or defenses alive at this stage. Plaintiff's motion to confirm simply asks the court to approve the judicial sale to Plaintiff which occurred on November 1, 2006. FE fails to explain how the requested information will shed any light on any issue before the court at that time.

The January, 2007 letters attached to FE's motion as Exhibits B and C imply that the information somehow "relates" to "the fair price of the 1,963 shares of Finance Enterprises, Ltd." FE does not explain how the price that Plaintiff was

willing to pay to acquire N. Harwood's claims (not the FE stock itself) *over five months ago* materially bears upon any aspect of FE's current fair market value.

Moreover, the fairness of the price will **not be an issue** for the court next Tuesday, February 6, because the final foreclosure decrees already direct the court to conduct **over-bidding**. Cf. Costa Brent v. Staveris Dev. Corp., 7 Haw. App. 40, 46, 741 P.2d 742, 747 (1987) ("[I]n essence, the lower court merely kept the auction going. Anyone who thought the property was worth more than the [winning] bid could have made a higher bid[.]").

Finally, even if the requested information had some marginal relevance, any tangential relationship to market value is substantially outweighed by: (1) the availability of much more current market information, including more recent public bids to buy FE's stock made by Tomato Bank, and (2) FE's vastly superior knowledge of how much its own stock is worth. See PBN and Honolulu Advertiser Articles, attached hereto as Exhibits 2 and 3 to Robert Klein declaration. Thus, the information sought is cumulative, unnecessary, available from better and more convenient/less damaging sources, and the burdens and costs of the proposed discovery far outweigh its likely benefits, "taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." FRCP 26(b)(2).

C.    This Court Should Issue a Protective Order Barring Further Inquiry

Privileged information falls outside the scope of permissible discovery.

FRCP 26(b)(1).  In this action, state law provides the rule of decision as to any

"claim" or "defense" that remains to be adjudicated, if any.  28 U.S.C. § 1652; see

also Exhibits 6 and 7 to the Reply (foreclosure judgments).  Accordingly, any

privileges are determined by Hawaii law.  Fed. R. Evid. 501.  Under Hawaii law, a

person is privileged "*to refuse to disclose* and to prevent other persons from

disclosing a trade secret owned by the person, if allowance of the privilege will not

tend to conceal fraud or otherwise work injustice."  Haw. R. Evid. 508 (emphasis

added).  In addition, as a general matter, this court is empowered to order "that a

trade secret or other confidential research, development, or commercial

information not be revealed . . .."  FRCP 26(c)(7).

Hawaii law provides that a trade secret is any "information . . . that

(1) [d]erives independent economic value, actual or potential, from not being

generally known to, and not being readily ascertainable by proper means by, other

persons who can obtain economic value from its disclosure or use; and (2) [i]s the

subject of efforts that are reasonable under the circumstances to maintain its

secrecy."  Haw. Rev. Stat. § 482B-2.

Pricing and bidding information has been traditionally accorded protection

as trade secrets where the statutory requirements are met.  White v. Schlage Lock

Co., 101 Cal. App. 4th 1443, 1455, 125 Cal. Rptr. 2d 277, 287 (2002); SI Handling

Sys., Inc. v. Heisley, 753 F.2d 1244, 1260 (3rd Cir. 1985); Lumex, Inc. v.

Highsmith, 919 F. Supp. 624, 628-30 (S.D.N.Y. 1996).  This is especially true

where the information is of potential value to others who may use it in the same or

similar transactions to the detriment of the trade secret's owner.  See Ovation

Plumbing, Inc. v. Furton, 33 P.3d 1221, 1225 (Colo. App. 2001) (construction bid).

Cf. also Kaapu v. Aloha Tower Dev. Corp., 74 Haw. 365, 389, 846 P.2d 882

(1993) ("Public disclosure of development proposals -- involving proprietary and

other confidential information, such as trade secrets and confidential commercial

and financial data -- prior to final negotiation of a long-term lease could

foreseeably give an unfair competitive advantage to other developers in the event

negotiations were to break down.").

      Knowing how much Plaintiff paid for the distressed debt held by N.

Harwood could give insight to Plaintiff's competitors or future prospective sellers

as to the price Plaintiff is willing to pay for distressed debt obligations in other

transactions.  There is no way to order production of the trade secret to FE without

impairing the trade secret, because FE is among the third parties from whom the

secret must be kept.  If the information is *relevant* to the fair market price of FE's

shares, but see discussion above to the contrary, then to that extent it has actual or

potential economic value to persons or entities, such as FE, who may be interested in bidding on FE shares or exercising rights of refusal.

III.  <u>CONCLUSION</u>

For all of these reasons, Plaintiff Kahala CCM Factors, LLC respectfully requests that the court deny the instant motion and enter a suitable protective order barring all further such inquiries or attempted discovery.

DATED:  Honolulu, Hawaii, _____ FEB - 2 2007 _____.


_____
ROBERT G. KLEIN
CHRISTOPHER J. COLE

Attorneys for Plaintiff
Kahala CCM Factors, LLC