WAGNER CHOI & EVERS
Attorneys at Law

JAMES A. WAGNER      #1493
CHUCK C. CHOI        #6435
NEIL J. VERBRUGGE    #7478
745 Fort Street, Suite 1900
Honolulu, Hawaii 96813
Telephone: (808) 533-1877
Telefacsimile: (808) 566-6900
E-Mail: wce@wcelaw.com

Attorneys for KAHALA CCM FACTORS, LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| KAHALA CCM FACTORS, LLC, | ) | Civil No. CV-02-00383 SOM/BMK |
|---|---|---|
| Plaintiff, | ) ) ) | AFFIDAVIT OF NEIL J. VERBRUGGE IN SUPPORT OF |
| vs. | ) ) | KAHALA CCM FACTORS, LLC'S MOTION FOR AN ORDER OF THE |
| HIRAM L. FONG, ALSO KNOWN AS HIRAM L. FONG, SR., et al. | ) ) | COURT APPROVING REPORT OF COMMISSIONER AND |
| Defendants. | ) ) ) ) ) ) ) ) ) ) ) | CONFIRMING SALE OF COLLATERAL (1,963 SHARES OF STOCK IN FINANCE ENTERPRISES, LTD.) AT PUBLIC AUCTION (EXHIBITS "1"-"3") |

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KAHALA CCM FACTORS, LLC, | ) | Civil No. CV-02-00383 SOM/BMK |
| | ) | |
| Plaintiff, | ) | AFFIDAVIT OF NEIL J. |
| | ) | VERBRUGGE IN SUPPORT OF |
| vs. | ) | KAHALA CCM FACTORS, LLC'S |
| | ) | MOTION FOR AN ORDER OF THE |
| HIRAM L. FONG, ALSO KNOWN AS | ) | COURT APPROVING REPORT OF |
| HIRAM L. FONG, SR., et al. | ) | COMMISSIONER AND |
| | ) | CONFIRMING SALE OF |
| Defendants. | ) | COLLATERAL (1,963 SHARES OF |
| | ) | STOCK IN FINANCE |
| | ) | ENTERPRISES, LTD.) AT PUBLIC |
| | ) | AUCTION (EXHIBITS "1"-"3") |
| | ) | |

| | | |
|---|---|---|
| STATE OF HAWAII | ) | |
| | ) | ss. |
| COUNTY OF HONOLULU | ) | |

I, NEIL J. VERBRUGGE, being duly first sworn upon oath, deposes and says:

1. All statements made in this affidavit are based on my personal knowledge, unless otherwise expressly stated, and I would be competent to testify on the matters stated herein.

2. I am an attorney licensed to practice in the State of Hawaii and the District of Hawaii.

3. I am a partner with the law firm of Wagner Choi & Evers,

counsel for Kahala CCM Factors, LLC.

    4.    I certify that attached hereto as Exhibit "1" is a copy of the Loan Agreement between Hiram L. Fong, Sr. and Bank of Honolulu. The terms of the Loan Agreement for $200,000.00 between Hiram L. Fong, Sr. and Kahala CCM's predecessor in interest, secured by a pledge of 241 shares in Finance Enterprises, Ltd. ("FEL"), provides:

> Lender may hire or pay someone else to collect this Note if Borrower does not pay. Borrower will also pay Lender that amount. <u>This includes, subject to any limited under applicable law, Lender's attorneys' fees and Lenders' legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower will also pay any court costs, in addition to all other sums provided by law</u>.

(Emphasis added).

    5.    I certify that attached hereto as Exhibit "2" is a copy of a commercial pledge agreement between Ellyn Lo Fong, Trustee of the Ellyn Lo Fong Revocable Trust dated 3/24/93 and Bank of Honolulu.

    6.    The terms of the Pledge Agreement whereby the 241 shares in FEL were pledged as security for the $200,000 loan provided:

> Attorneys' fees and expenses. Borrower and Grantor agree to pay upon demand all of Lender's legal expenses,

> incurred in connection with the enforcement of this Agreement. <u>Lender may pay someone else to help enforce this Agreement, and Borrower and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses incurred for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services</u>. Borrower and Grantor also shall pay all court costs and such additional fees as may be directed by the court.

(Emphasis added).

7. On December 1, 2005, the Court entered its findings of fact and conclusions of law in this action ("Decree of Foreclosure"), which Decree of Foreclosure awarded Kahala CCM its attorneys' fees and costs.

8. I certify that attached hereto as Exhibit "3" is a true and correct copy of billing invoices prepared by the law firm of Wagner Choi & Evers for legal expenses and costs incurred by Kahala CCM Factors, LLC up to and including February 4, 2007.

9. Exhibit "3" adequately describes the services rendered and expenses incurred, and describes the work performed by each attorney broken down by hours or fractions thereof.

10. Pursuant to LR 54.3(d)(1), which requires an itemization of all work performed, all work performed on behalf of Kahala CCM Factors, LLC by

Wagner Choi & Evers was in the litigation phase of "motions practice."

11. The Westlaw and Pacer charges are for research done specifically for this case that is not otherwise covered in the firm's standard fee arrangements for those services.

12. The firm's copy charges are calculated at a standard fee of .20 per page.

13. The firm's fax charges are calculated at a standard fee of .30 per page.

14. The firm's postage charges are calculated at the standard rates imposed by the U.S. Post Office.

15. Up to and including February 4, 2007, Kahala CCM incurred attorneys' fees from the law firm of Wagner Choi & Evers in the amount of $19,057.06 (including state tax), and costs in the amount of $435.52.

16. In total, up to and including February 4, 2007, Kahala CCM incurred total attorneys' fees and costs from the law firm of Wagner Choi & Evers in the amount of $19,493.21.

17. In Bankruptcy Case No. 03-00674 (RJF), the Chapter 7 Bankruptcy Trustee asserted rights to sell Kahala CCM's collateral, the 241 shares of FEL, by virtue of its status as representative of Estate of Debtors Hiram Leong Fong, Sr. and Ellyn Lo Fong.

18. The attorneys' fees and costs incurred by Kahala CCM was reasonable and necessary to oppose the Chapter 7 Bankruptcy Trustee's Motion to sell the 241 shares in FEL, and was required to protect Kahala CCM's interest in the 241 shares.

19. Kahala CCM incurred the legal costs opposing the Chapter 7 Bankruptcy Trustee's Motion to sell the 241 shares in FEL as part of its efforts to collect on the Note and to enforce its rights under the Pledge Agreement.

20. All work performed by the attorneys of Wagner Choi & Evers was performed at the customary rate for such work which was as follows:

(a) Jim Wagner, Esq., partner, $425

(b) Neil Verbrugge, Esq., partner, $220

21. I believe that all of the fees and costs incurred on behalf of Kahala CCM Factors, LLC are reasonable.

FURTHER AFFIANT SAYETH NAUGHT

_____
NEIL J. VERBRUGGE

Subscribed and sworn to before me
the 5th day of February, 2007

_Logan C. Alexander_
Logan C. Alexander
Notary Public, State of _11/16/2010_

# PROMISSORY NOTE

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $200,000.00 | 01-27-1994 | 01-31-1995 | 01-735004 | T33C9B | 08 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG, SR.
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

---

**Principal Amount:** $200,000.00   **Initial Rate:** 7.000%   **Date of Note:** January 27, 1994

**PROMISE TO PAY.** HIRAM L. FONG, SR. ("Borrower") promises to pay to Bank of Honolulu ("Lender"), or order, in lawful money of the United States of America, the principal amount of Two Hundred Thousand & 00/100 Dollars ($200,000.00) or so much as may be outstanding, together with interest on the unpaid outstanding principal balance of each advance. Interest shall be calculated from the date of each advance until repayment of each advance.

**PAYMENT.** Borrower will pay this loan in one payment of all outstanding principal plus all accrued unpaid interest on January 31, 1995. In addition, Borrower will pay regular quarterly payments of accrued unpaid interest beginning April 1, 1994, and all subsequent interest payments are due on the same day of each quarter after that. Borrower will pay Lender at Lender's address shown above or at such other place as Lender may designate in writing. Unless otherwise agreed or required by applicable law, payments will be applied first to accrued unpaid interest, then to principal, and any remaining amount to any unpaid collection costs and late charges.

**VARIABLE INTEREST RATE.** The interest rate on this Note is subject to change from time to time based on changes in an index which is the BANK OF HONOLULU PREFERRED BASE RATE (the "Index"). The Index is not necessarily the lowest rate charged by Lender on its loans and is set by Lender in its sole discretion. If the Index becomes unavailable during the term of this loan, Lender may designate a substitute index after notifying Borrower. Lender will tell Borrower the current Index rate upon Borrower's request. Borrower understands that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is 6.000% per annum. The interest rate to be applied to the unpaid principal balance of this Note will be at a rate of 1.000 percentage point over the Index, resulting in an initial rate of 7.000% per annum. NOTICE: Under no circumstances will the interest rate on this Note be more than the maximum rate allowed by applicable law.

**PREPAYMENT.** Borrower may pay without penalty all or a portion of the amount owed earlier than it is due. Early payments will not, unless agreed to by Lender in writing, relieve Borrower of Borrower's obligation to continue to make payments of accrued unpaid interest. Rather, they will reduce the principal balance due.

**LATE CHARGE.** If a payment is 10 days or more late, Borrower will be charged 5.000% of the regularly scheduled payment.

**DEFAULT.** Borrower will be in default if any of the following happens: (a) Borrower fails to make any payment when due. (b) Borrower breaks any promise Borrower has made to Lender, or Borrower fails to perform promptly at the time and strictly in the manner provided in this Note or any agreement related to this Note, or in any other agreement or loan Borrower has with Lender. (c) Any representation or statement made or furnished to Lender by Borrower or on Borrower's behalf is false or misleading in any material respect. (d) Borrower dies or becomes insolvent, a receiver is appointed for any part of Borrower's property, Borrower makes an assignment for the benefit of creditors, or any proceeding is commenced either by Borrower or against Borrower under any bankruptcy or insolvency laws. (e) Any creditor tries to take any of Borrower's property on or in which Lender has a lien or security interest. This includes a garnishment of any of Borrower's accounts with Lender. (f) Any of the events described in this default section occurs with respect to any guarantor of this Note.

**LENDER'S RIGHTS.** Upon default, Lender may declare the entire unpaid principal balance on this Note and all accrued unpaid interest immediately due, without notice, and then Borrower will pay that amount. Upon default, including failure to pay upon final maturity, Lender, at its option, may also, if permitted under applicable law, increase the variable interest rate on this Note to 24.000% per annum. The interest rate will not exceed the maximum rate permitted by applicable law. Lender may hire or pay someone else to help collect this Note if Borrower does not pay. Borrower also will pay Lender that amount. This includes, subject to any limits under applicable law, Lender's attorneys' fees and Lender's legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. If not prohibited by applicable law, Borrower also will pay any court costs, in addition to all other sums provided by law. This Note has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, Borrower agrees upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. **This Note shall be governed by and construed in accordance with the laws of the State of Hawaii.**

**RIGHT OF SETOFF.** Borrower grants to Lender a contractual possessory security interest in, and hereby assigns, conveys, delivers, pledges, and transfers to Lender all Borrower's right, title and interest in and to, Borrower's accounts with Lender (whether checking, savings, or some other account), including without limitation all accounts held jointly with someone else and all accounts Borrower may open in the future, excluding however all IRA, Keogh, and trust accounts. Borrower authorizes Lender, to the extent permitted by applicable law, to charge or setoff all sums owing on this Note against any and all such accounts.

**LINE OF CREDIT.** This Note evidences a revolving line of credit. Advances under this Note may be requested only in writing by Borrower or as provided in this paragraph. All communications, instructions, or directions by telephone or otherwise to Lender are to be directed to Lender's office shown above. The following party or parties are authorized as provided in this paragraph to request advances under the line of credit until Lender receives from Borrower at Lender's address shown above written notice of revocation of their authority: HIRAM L. FONG, SR. Each advance shall be for the sum of at least Five Thousand and No/100 Dollars ($,5000.00). Each advance will be reflected on a seperate promissory note that may be coterminus, but may not exceed the maturity of this Note. Borrower agrees to be liable for all sums either: (a) advanced in accordance with the instructions of an authorized person or (b) credited to any of Borrower's accounts with Lender. The unpaid principal balance owing on this Note at any time may be evidenced by endorsements on this Note or by Lender's internal records, including daily computer print-outs. Lender will have no obligation to advance funds under this Note if: (a) Borrower or any guarantor is in default under the terms of this Note or any agreement that Borrower or any guarantor has with Lender, including any agreement made in connection with the signing of this Note; (b) Borrower or any guarantor ceases doing business or is insolvent; (c) any guarantor seeks, claims or otherwise attempts to limit, modify or revoke such guarantor's guarantee of this Note or any other loan with Lender; or (d) Borrower has applied funds provided pursuant to this Note for purposes other than those authorized by Lender.

# EXHIBIT 1

| 01-27-1994 | PROMISSORY NOTE | Page 2 |
|---|---|---|
| Loan No 01-735004 | (Continued) | |

**GENERAL PROVISIONS.** Lender may delay or forgo enforcing any of its rights or remedies under this Note without losing them. Borrower and any other person who signs, guarantees or endorses this Note, to the extent allowed by law, waive presentment, demand for payment, protest and notice of dishonor. Upon any change in the terms of this Note, and unless otherwise expressly stated in writing, no party who signs this Note, whether as maker, guarantor, accommodation maker or endorser, shall be released from liability. All such parties agree that Lender may renew or extend (repeatedly and for any length of time) this loan, or release any party or guarantor or collateral; or impair, fail to realize upon or perfect Lender's security interest in the collateral; and take any other action deemed necessary by Lender without the consent of or notice to anyone. All such parties also agree that Lender may modify this loan without the consent of or notice to anyone other than the party with whom the modification is made.

PRIOR TO SIGNING THIS NOTE, BORROWER READ AND UNDERSTOOD ALL THE PROVISIONS OF THIS NOTE, INCLUDING THE VARIABLE INTEREST RATE PROVISIONS. BORROWER AGREES TO THE TERMS OF THE NOTE AND ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THE NOTE.

BORROWER:

X _[signature]_
HIRAM L. FONG, SR.

Variable Rate. Line of Credit.   LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.19 (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-D20 HFONG.LN]

# COMMERCIAL PLEDGE AGREEMENT

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|
| $200,000.00 | 01-27-1994 | 01-31-1995 | | T33C9B | 09 | | TC 66 | |

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** HIRAM L. FONG, SR.
1102 ALEWA DRIVE
HONOLULU, HI 96817

**Lender:** Bank of Honolulu
Main Office
841 Bishop Street
Honolulu, HI 96813

**Grantor:** ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93
1102 ALEWA DRIVE
HONOLULU, HI 96817

THIS COMMERCIAL PLEDGE AGREEMENT is entered into among HIRAM L. FONG, SR. (referred to below as "Borrower"); ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93 (referred to below as "Grantor"); and Bank of Honolulu (referred to below as "Lender").

**GRANT OF SECURITY INTEREST.** For valuable consideration, Grantor grants to Lender a security interest in the Collateral to secure the Indebtedness and agrees that Lender shall have the rights stated in this Agreement with respect to the Collateral, in addition to all other rights which Lender may have by law.

**DEFINITIONS.** The following words shall have the following meanings when used in this Agreement:

**Agreement.** The word "Agreement" means this Commercial Pledge Agreement, as this Commercial Pledge Agreement may be amended or modified from time to time, together with all exhibits and schedules attached to this Commercial Pledge Agreement from time to time.

**Borrower.** The word "Borrower" means each and every person or entity signing the Note, including without limitation HIRAM L. FONG, SR..

**Collateral.** The word "Collateral" means the following specifically described property, which Grantor has delivered or agrees to deliver (or cause to be delivered) immediately to Lender, together with all Income and Proceeds as described below:

   241.000 shares of Finance Enterprises, Ltd., Certificiated No. 238, Dated August 12, 1993.

In addition, the word "Collateral" includes all property of Grantor, in the possession of Lender (or in the possession of a third party subject to the control of Lender), whether now or hereafter existing and whether tangible or intangible in character, including without limitation each of the following:

   (a) All property to which Lender acquires title or documents of title.

   (b) All property assigned to Lender.

   (c) All promissory notes, bills of exchange, stock certificates, bonds, savings passbooks, time certificates of deposit, insurance policies, and all other instruments and evidences of an obligation.

   (d) All records relating to any of the property described in this Collateral section, whether in the form of a writing, microfilm, microfiche, or electronic media.

**Event of Default.** The words "Event of Default" mean and include any of the Events of Default set forth below in the section titled "Events of Default."

**Grantor.** The word "Grantor" means ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93. Any Grantor who signs this Agreement, but does not sign the Note, is signing this Agreement only to grant a security interest in Grantor's interest in the Collateral to Lender and is not personally liable under the Note except as otherwise provided by contract or law (e.g., personal liability under a guaranty or as a surety).

**Guarantor.** The word "Guarantor" means and includes without limitation, each and all of the guarantors, sureties, and accommodation parties in connection with the Indebtedness.

**Income and Proceeds.** The words "Income and Proceeds" mean all present and future income, proceeds, earnings, increases, and substitutions from or for the Collateral of every kind and nature, including without limitation all payments, interest, profits, distributions, benefits, rights, options, warrants, dividends, stock dividends, stock splits, stock rights, regulatory dividends, distributions, subscriptions, monies, claims for money due and to become due, proceeds of any insurance on the Collateral, shares of stock of different par value or no par value issued in substitution or exchange for shares included in the Collateral, and all other property Grantor is entitled to receive on account of such Collateral, including accounts, contract rights, documents, instruments, chattel paper, and general intangibles.

**Indebtedness.** The word "Indebtedness" means the indebtedness evidenced by the Note, including all principal and interest, together with all other indebtedness and costs and expenses for which Borrower or Grantor is responsible under this Agreement or under any of the Related Documents.

**Lender.** The word "Lender" means Bank of Honolulu, its successors and assigns.

**Note.** The word "Note" means the note or credit agreement dated January 27, 1994, in the principal amount of $200,000.00 from Borrower to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of and substitutions for the note or credit agreement.

**Obligor.** The word "Obligor" means and includes without limitation any and all persons or entities obligated to pay money or to perform some other act under the Collateral.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**BORROWER'S WAIVERS AND RESPONSIBILITIES.** Except as otherwise required under this Agreement or by applicable law, (a) Borrower agrees that Lender need not tell Borrower about any action or inaction Lender takes in connection with this Agreement; (b) Borrower assumes the responsibility for being and keeping informed about the Collateral; and (c) Borrower waives any defenses that may arise because of any action or inaction of Lender, including without limitation any failure of Lender to realize upon the Collateral or any delay by Lender in realizing upon the Collateral; and Borrower agrees to remain liable under the Note no matter what action Lender takes or fails to take under this Agreement.

# EXHIBIT 2

| 01-27-1994 | OMMERCIAL PLEDGE AGR__  r | Page 2 |
|---|---|---|
| Loan No | (Continued) | |

**GRANTOR'S REPRESENTATIONS AND WARRANTIES.** Grantor warrants that: (a) this Agreement is executed at Borrower's request and not at the request of Lender; (b) Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral to Lender; (c) Grantor has established adequate means of obtaining from Borrower on a continuing basis information about Borrower's financial condition; and (d) Lender has made no representation to Grantor about Borrower or Borrower's creditworthiness.

**GRANTOR'S WAIVERS.** Grantor waives all requirements of presentment, protest, demand, and notice of dishonor or non-payment to Grantor, Borrower, or any other party to the Indebtedness or the Collateral. Lender may do any of the following with respect to any obligation of any Borrower, without first obtaining the consent of Grantor: (a) grant any extension of time for any payment, (b) grant any renewal, (c) permit any modification of payment terms or other terms, or (d) exchange or release any Collateral or other security. No such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

If now or hereafter (a) Borrower shall be or become insolvent, and (b) the Indebtedness shall not at all times until paid be fully secured by collateral pledged by Borrower, Grantor hereby forever waives and relinquishes in favor of Lender and Borrower, and their respective successors, any claim or right to payment Grantor may now have or hereafter have or acquire against Borrower, by subrogation or otherwise, so that at no time shall Grantor be or become a "creditor" of Borrower within the meaning of 11 U.S.C. section 547(b), or any successor provision of the Federal bankruptcy laws.

**RIGHT OF SETOFF.** Grantor hereby grants Lender a contractual possessory security interest in and hereby assigns, conveys, delivers, pledges, and transfers all of Grantor's right, title and interest in and to Grantor's accounts with Lender (whether checking, savings, or some other account), including all accounts held jointly with someone else and all accounts Grantor may open in the future, excluding however all IRA, Keogh, and trust accounts. Grantor authorizes Lender, to the extent permitted by applicable law, to charge or setoff all Indebtedness against any and all such accounts.

**GRANTOR'S REPRESENTATIONS AND WARRANTIES WITH RESPECT TO THE COLLATERAL.** Grantor represents and warrants to Lender that:

**Ownership.** Grantor is the lawful owner of the Collateral free and clear of all security interests, liens, encumbrances and claims of others except as disclosed to and accepted by Lender in writing prior to execution of this Agreement.

**Right to Pledge.** Grantor has the full right, power and authority to enter into this Agreement and to pledge the Collateral.

**Binding Effect.** This Agreement is binding upon Grantor, as well as Grantor's heirs, successors, representatives and assigns, and is legally enforceable in accordance with its terms.

**No Further Assignment.** Grantor has not, and will not, sell, assign, transfer, encumber or otherwise dispose of any of Grantor's rights in the Collateral except as provided in this Agreement.

**No Defaults.** There are no defaults existing under the Collateral, and there are no offsets or counterclaims to the same. Grantor will strictly and promptly perform each of the terms, conditions, covenants and agreements contained in the Collateral which are to be performed by Grantor, if any.

**No Violation.** The execution and delivery of this Agreement will not violate any law or agreement governing Grantor or to which Grantor is a party.

**LENDER'S RIGHTS AND OBLIGATIONS WITH RESPECT TO COLLATERAL.** Lender may hold the Collateral until all the Indebtedness has been paid and satisfied and thereafter may deliver the Collateral to any Grantor. Lender shall have the following rights in addition to all other rights it may have by law:

**Maintenance and Protection of Collateral.** Lender may, but shall not be obligated to, take such steps as it deems necessary or desirable to protect, maintain, insure, store, or care for the Collateral, including payment of any liens or claims against the Collateral. Lender may charge any cost incurred in so doing to Grantor.

**Income and Proceeds from the Collateral.** Lender may receive all Income and Proceeds and add it to the Collateral. Grantor agrees to deliver to Lender immediately upon receipt, in the exact form received and without commingling with other property, all Income and Proceeds from the Collateral which may be received by, paid, or delivered to Grantor or for Grantor's account, whether as an addition to, in discharge of, in substitution of, or in exchange for any of the Collateral.

**Application of Cash.** At Lender's option, Lender may apply any cash, whether included in the Collateral or received as Income and Proceeds or through liquidation, sale, or retirement, of the Collateral, to the satisfaction of the Indebtedness or such portion thereof as Lender shall choose, whether or not matured.

**Transactions with Others.** Lender may (a) extend time for payment or other performance, (b) grant a renewal or change in terms or conditions, or (c) compromise, compound or release any obligation, with any one or more Obligors, endorsers, or Guarantors of the Indebtedness as Lender deems advisable, without obtaining the prior written consent of Grantor, and no such act or failure to act shall affect Lender's rights against Grantor or the Collateral.

**All Collateral Secures Indebtedness.** All Collateral shall be security for the Indebtedness, whether the Collateral is located at one or more offices or branches of Lender and whether or not the office or branch where the Indebtedness is created is aware of or relies upon the Collateral.

**Collection of Collateral.** Lender, at Lender's option may, but need not, collect directly from the Obligors on any of the Collateral all Income and Proceeds or other sums of money and other property due and to become due under the Collateral, and Grantor authorizes and directs the Obligors, if Lender exercises such option, to pay and deliver to Lender all Income and Proceeds and other sums of money and other property payable by the terms of the Collateral and to accept Lender's receipt for the payments.

**Power of Attorney.** Grantor irrevocably appoints Lender as Grantor's attorney-in-fact, with full power of substitution, (a) to demand, collect, receive, receipt for, sue and recover all Income and Proceeds and other sums of money and other property which may now or hereafter become due, owing or payable from the Obligors in accordance with the terms of the Collateral; (b) to execute, sign and endorse any and all instruments, receipts, checks, drafts and warrants issued in payment for the Collateral; (c) to settle or compromise any and all claims arising under the Collateral, and in the place and stead of Grantor, execute and deliver Grantor's release and acquittance for Grantor; (d) to file any claim or claims or to take any action or institute or take part in any proceedings, either in Lender's own name or in the name of Grantor, or otherwise, which in the discretion of Lender may seem to be necessary or advisable; and (e) to execute in Grantor's name and to deliver to the Obligors on Grantor's behalf, at the time and in the manner specified by the Collateral, any necessary instruments or documents.

**Perfection of Security Interest.** Upon request of Lender, Grantor will deliver to Lender any and all of the documents evidencing or constituting the Collateral. Grantor hereby appoints Lender as Grantor's irrevocable attorney-in-fact for the purpose of executing any documents necessary to perfect or to continue the security interest granted in this Agreement.

**EXPENDITURES BY LENDER.** If not discharged or paid when due, Lender may (but shall not be obligated to) discharge or pay any amounts required to be discharged or paid by Grantor under this Agreement, including without limitation all taxes, liens, security interests, encumbrances, and other claims, at any time levied or placed on the Collateral. Lender also may (but shall not be obligated to) pay all costs for insuring, maintaining and preserving the Collateral. All such expenditures incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses shall become a part of the Indebtedness and, at Lender's option, will (a) be payable on demand, (b) be added to the balance of the Note and be apportioned among and be payable with any

installment payments to become due during either (i) the term of any applicable insurance policy or (ii) the remaining term of the Note, or (c) be treated as a balloon payment which will be due and payable at the Note's maturity. This Agreement also will secure payment of these amounts. Such right shall be in addition to all other rights and remedies to which Lender may be entitled upon the occurrence of an Event of Default.

**LIMITATIONS ON OBLIGATIONS OF LENDER.** Lender shall use ordinary reasonable care in the physical preservation and custody of the Collateral in Lender's possession, but shall have no other obligation to protect the Collateral or its value. In particular, but without limitation, Lender shall have no responsibility for (a) any depreciation in value of the Collateral or for the collection or protection of any Income and Proceeds from the Collateral, (b) preservation of rights against parties to the Collateral or against third persons, (c) ascertaining any maturities, calls, conversions, exchanges, offers, tenders, or similar matters relating to any of the Collateral, or (d) informing Grantor about any of the above, whether or not Lender has or is deemed to have knowledge of such matters. Except as provided above, Lender shall have no liability for depreciation or deterioration of the Collateral.

**EVENTS OF DEFAULT.** Each of the following shall constitute an Event of Default under this Agreement:

   **Default on Indebtedness.** Failure of Borrower to make any payment when due on the Indebtedness.

   **Other Defaults.** Failure of Borrower or Grantor to comply with or to perform any other term, obligation, covenant or condition contained in this Agreement or in any of the Related Documents or failure of Borrower to comply with or to perform any term, obligation, covenant or condition contained in any other agreement between Lender and Borrower.

   **False Statements.** Any warranty, representation or statement made or furnished to Lender by or on behalf of Borrower or Grantor under this Agreement is false or misleading in any material respect, either now or at the time made or furnished.

   **Defective Collateralization.** This Agreement or any of the Related Documents ceases to be in full force and effect (including failure of any collateral documents to create a valid and perfected security interest or lien) at any time and for any reason.

   **Death or Insolvency.** The death of Borrower or Grantor or the dissolution or termination of Borrower or Grantor's existence as a going business, the insolvency of Borrower or Grantor, the appointment of a receiver for any part of Borrower or Grantor's property, any assignment for the benefit of creditors, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Borrower or Grantor.

   **Creditor or Forfeiture Proceedings.** Commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or Grantor or by any governmental agency against the Collateral or any other collateral securing the Indebtedness. This includes a garnishment of any of Borrower or Grantor's deposit accounts with Lender.

   **Events Affecting Guarantor.** Any of the preceding events occurs with respect to any Guarantor of any of the Indebtedness or such Guarantor dies or becomes incompetent.

   **Insecurity.** Lender, in good faith, deems itself insecure.

**RIGHTS AND REMEDIES ON DEFAULT.** If an Event of Default occurs under this Agreement, at any time thereafter, Lender may exercise any one or more of the following rights and remedies:

   **Accelerate Indebtedness.** Declare all Indebtedness, including any prepayment penalty which Borrower would be required to pay, immediately due and payable, without notice of any kind to Borrower or Grantor.

   **Collect the Collateral.** Collect any of the Collateral and, at Lender's option and to the extent permitted by applicable law, retain possession of the Collateral while suing on the Indebtedness.

   **Sell the Collateral.** Sell the Collateral, at Lender's discretion, as a unit or in parcels, at one or more public or private sales. Unless the Collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, Lender shall give or mail to Grantor, or any of them, notice at least ten (10) days in advance of the time and place of any public sale, or of the date after which any private sale may be made. Grantor agrees that any requirement of reasonable notice is satisfied if Lender mails notice by ordinary mail addressed to Grantor, or any of them, at the last address Grantor has given Lender in writing. If a public sale is held, there shall be sufficient compliance with all requirements of notice to the public by a single publication in any newspaper of general circulation in the county where the Collateral is located, setting forth the time and place of sale and a brief description of the property to be sold. Lender may be a purchaser at any public sale.

   **Register Securities.** Register any securities included in the Collateral in Lender's name and exercise any rights normally incident to the ownership of securities.

   **Sell Securities.** Sell any securities included in the Collateral in a manner consistent with applicable federal and state securities laws, notwithstanding any other provision of this or any other agreement. If, because of restrictions under such laws, Lender is or believes it is unable to sell the securities in an open market transaction, Grantor agrees that Lender shall have no obligation to delay sale until the securities can be registered, and may make a private sale to one or more persons or to a restricted group of persons, even though such sale may result in a price that is less favorable than might be obtained in an open market transaction, and such a sale shall be considered commercially reasonable. If any securities held as Collateral are "restricted securities" as defined in the Rules of the Securities and Exchange Commission (such as Regulation D or Rule 144) or state securities departments under state "Blue Sky" laws, or if Borrower or Grantor is an affiliate of the issuer of the securities, Borrower and Grantor agree that neither Grantor nor any member of Grantor's family will sell or dispose of any securities of such issuer without obtaining Lender's prior written consent.

   **Foreclosure.** Maintain a judicial suit for foreclosure and sale of the Collateral.

   **Transfer Title.** Effect transfer of title upon sale of all or part of the Collateral. For this purpose, Grantor irrevocably appoints Lender as its attorney-in-fact to execute endorsements, assignments and instruments in the name of Grantor and each of them (if more than one) as shall be necessary or reasonable.

   **Other Rights and Remedies.** Have and exercise any or all of the rights and remedies of a secured creditor under the provisions of the Uniform Commercial Code, at law, in equity, or otherwise.

   **Application of Proceeds.** Apply any cash which is part of the Collateral, or which is received from the collection or sale of the Collateral, to reimbursement of any expenses, including any costs for registration of securities, commissions incurred in connection with a sale, attorney fees as provided below, and court costs, whether or not there is a lawsuit and including any fees on appeal, incurred by Lender in connection with the collection and sale of such Collateral and to the payment of the Indebtedness of Borrower to Lender, with any excess funds to be paid to Grantor as the interests of Grantor may appear. Borrower agrees, to the extent permitted by law, to pay any deficiency after application of the proceeds of the Collateral to the Indebtedness.

   **Cumulative Remedies.** All of Lender's rights and remedies, whether evidenced by this Agreement or by any other writing, shall be cumulative and may be exercised singularly or concurrently. Election by Lender to pursue any remedy shall not exclude pursuit of any other remedy, and an election to make expenditures or to take action to perform an obligation of Grantor under this Agreement, after Grantor's failure to perform, shall not affect Lender's right to declare a default and to exercise its remedies.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Agreement:

| 01-27-1994 | JMMERCIAL PLEDGE AGREı  ſ | Page 4 |
|---|---|---|
| Loan No | (Continued) | |

**Amendments.** This Agreement, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Agreement. No alteration of or amendment to this Agreement shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Agreement has been delivered to Lender and accepted by Lender in the State of Hawaii. If there is a lawsuit, Borrower and Grantor agree upon Lender's request to submit to the jurisdiction of the courts of the City and County of Honolulu, the State of Hawaii. This Agreement shall be governed by and construed in accordance with the laws of the State of Hawaii.

**Attorneys' Fees; Expenses.** Borrower and Grantor agree to pay upon demand all of Lender's costs and expenses, including attorneys' fees and Lender's legal expenses, incurred in connection with the enforcement of this Agreement. Lender may pay someone else to help enforce this Agreement, and Borrower and Grantor shall pay the costs and expenses of such enforcement. Costs and expenses include Lender's attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys' fees and legal expenses for bankruptcy proceedings (and including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services. Borrower and Grantor also shall pay all court costs and such additional fees as may be directed by the court.

**Caption Headings.** Caption headings in this Agreement are for convenience purposes only and are not to be used to interpret or define the provisions of this Agreement.

**Multiple Parties.** All obligations of Borrower and Grantor under this Agreement shall be joint and several, and all references to Borrower shall mean each and every Borrower, and all references to Grantor shall mean each and every Grantor. This means that each of the persons signing below is responsible for all obligations in this Agreement.

**Notices.** All notices required to be given under this Agreement shall be given in writing and shall be effective when actually delivered or when deposited with a nationally recognized overnight courier or deposited in the United States mail, first class, postage prepaid, addressed to the party to whom the notice is to be given at the address shown above. Any party may change its address for notices under this Agreement by giving formal written notice to the other parties, specifying that the purpose of the notice is to change the party's address. To the extent permitted by applicable law, if there is more than one Borrower or Grantor, notice to any Borrower or Grantor will constitute notice to all Borrower and Grantors. For notice purposes, Borrower or Grantor agrees to keep Lender informed at all times of Borrower or Grantor's current address(es).

**Severability.** If a court of competent jurisdiction finds any provision of this Agreement to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances. If feasible, any such offending provision shall be deemed to be modified to be within the limits of enforceability or validity; however, if the offending provision cannot be so modified, it shall be stricken and all other provisions of this Agreement in all other respects shall remain valid and enforceable.

**Successor Interests.** Subject to the limitations set forth above on transfer of the Collateral, this Agreement shall be binding upon and inure to the benefit of the parties, their successors and assigns.

**Waiver.** Lender shall not be deemed to have waived any rights under this Agreement unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Agreement shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Agreement. No prior waiver by Lender, nor any course of dealing between Lender and Grantor, shall constitute a waiver of any of Lender's rights or of any of Grantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Agreement, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

BORROWER AND GRANTOR ACKNOWLEDGE HAVING READ ALL THE PROVISIONS OF THIS PLEDGE AGREEMENT, AND BORROWER AND GRANTOR AGREE TO ITS TERMS. THIS AGREEMENT IS DATED JANUARY 27, 1994.

BORROWER:

X _____
HIRAM L. FONG, SR.

GRANTOR:

X _____
ELLYN LO FONG, TRUSTEE OF THE ELLYN LO FONG REVOCABLE TRUST DATED 3/24/93

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.17 (c) 1994 CFI ProServices, Inc. All rights reserved. [HI-E60 HFONG.LN]

James A. Wagner
Chuck C. Choi
James F. Evers

745 Fort Street
Suite 1900
Honolulu, Hawaii 96813

Kahala CCM Factors, LLC
c/o Kahala Capital
7 Waterfront Plaza #400
Honolulu, HI 96813

**WAGNER CHOI & EVERS**

ATTORNEYS AT LAW

Phone: (808) 533-1877
Fax:   (808) 566-6900
E-mail: wcelaw@wcelaw.com

February 5, 2007
ACCOUNT NO:  634-00
INVOICE NO:  10976
RESPONSIBLE ATTY:  JAW

RE:                                                                                                          HOURS

01-16-07
JAW   Review materials re Fong stock; telephone conference with Smith re   1.75
      same; conference with NJV re stay issues.

NJV   Conference with JAW re trustee's motion to sell stock (.20); review   7.50
      trustee's memo (.70); review case docket, stay and sale pleadings
      (1.00); research when foreclosure proceedings on pledge of stock
      have progressed to point that stock is not property of estate (2.80);
      research UCC 490-9-623, UCC 490-9-610, UCC 490-9-602, UCC
      490-9-622 (1.50) ; research cases cited by trustee (1.30).

01-17-07
JAW   Telephone conference with Hiramatsu re background.                   0.25

JAW   Conference with NJV re stay issues; telephone conference with         1.50
      Smith and Michael re status, objectives; telephone conference with
      Cole re background.

NJV   Research definition of disposition and sale under UCC 9-610 (1.10);  12.20
      telephone conference with client (.30); telephone conference with
      Cole (.40); conference with JAW (.30); telephone conference with
      Hiramatsu (.10); telephone conference with Suemori (.10); review
      Hiram Fong, Jr.'s docket (.30); review Rodney and Patsy's docket
      (.30); conference with JAW re 2-year time(.10); prepare timeline
      (.10); e-mail to Hiramatsu re timeline (.10); e-mail from Cole with
      attachments (.40); review case materials from JAW (.50); draft
      opposition (5.00); research value under 363(f) (.90); research
      calculation of proceeds under foreclosure sale surplus issue (2.20).

01-18-07
JAW   Review draft opposition and discuss with NJV:                         2.00

**EXHIBIT 3**

WAGNER CHOI & EVERS

Page: 2
02-05-07

Kahala CCM Factors, LLC

ACCOUNT NO:   634-00
INVOICE NO:   10976

|  |  |  |
|---|---|---|
|  | telephone conference with Halpern, Smith, Cole, et al. re opposition; revise Tius' motion. |  |
| NJV | Conference with Cole and client (.80); conference with JAW re lifting of stay an issue on reinstatement of stay (.40); research on procedure to reinstate automatic stay if trustee has complied (1.10); research estoppel theory as to no equity in property (.90); draft and revise opposition (3.10); telephone conference with Cole re additional indebtedness (.20); draft revise opposition (1.10); e-mail draft to Cole and client (.10); review opposition (.50); assemble exhibits (.40); draft declarations (.30). | 8.90 |
| 01-19-07 |  |  |
| JAW | Review draft memo and discuss with NJV. | 0.50 |
| NJV | Analyze 363(f) issues (1.30); conference with JAW re legal issues (.20); telephone conference with Smith and Cole (.50); draft declaration for Smith (.40); telephone conference with Smith re attorney's fees and per diem interest (.10); telephone conference with Cole re transfer date (.10); draft and revise opposition (2.70); e-mail from Cole re guaranty (.10); draft and revise opposition (1.10); telephone conference with Smith re declaration (.10); assemble and review exhibits (.50); revise opposition (.40); e-mail revised declaration to Cole (.10); telephone conference with Stewart (.10); revise opposition (.30); revise Cole declaration (.20); telephone message to Cole (.10); revise opposition (.30); telephone conference with Cole re declaration (.10). | 8.70 |
| 01-22-07 |  |  |
| NJV | E-mails to and from Smith (.20); telephone conference with Guben re his consent to 1/22/05 filing (.10); review Tius pleading in R. Fong's case (.70). | 1.00 |
| 01-23-07 |  |  |
| JAW | Conference with NJV re status and notice of transfer; telephone conference with Jones re district court case. | 0.40 |
| NJV | Conference re 3001 issue with JAW (.20); review Rule 3001 re transfer of claims (.10); review dockets of bankruptcy cases re proofs of claims (.60); research Colliers 3001(e) on meaning of "for security" vs. unconditional timeliness of 3001(e) transfer and validity of transfer (1.30); draft notice of transfer for Hiram Fong, Sr.'s case (1.20); assemble exhibits and follow-up on filing (.10); | 4.50 |

WAGNER
CHOI &
EVERS

Kahala CCM Factors, LLC

Page:     3
02-05-07
ACCOUNT NO:      634-00
INVOICE NO:      10976

|  |  |  |
|---|---|---|
|  | draft notice of transfer for Rodney Fong's case (.40); assemble exhibits and follow-up on filing (.10); telephone conference with Bankruptcy Court (.10); follow-up on filing in claims register (.10); telephone conference with Hiramatsu (.20). |  |
| 01-25-07 |  |  |
| NJV | Telephone conference with Cole re 362(h) and claim allowance jurisdiction issues (.40); review filing by Tomato Bank (.10). | 0.50 |
| 01-26-07 |  |  |
| NJV | Telephone conference with Cole re exhibits (.10); assemble Smith declaration and exhibits for plaintiff (.10); e-mail to Cole (.10); review reply of trustee (.80); research caselaw cited by trustee (1.30); research 506(b) issues on collection of default interest by over-secured creditor (1.50); research whether allowance of contract rate of interest includes default interest calculated under non-bankruptcy law under 506(b) (1.20); analyze In re Melbell case (.50). | 5.60 |
| 01-29-07 |  |  |
| NJV | Conference with JAW re trustee's reply (.10); review supplemental memorandum by Finance Enterprise (.50); research issues raised in Trustee's reply (2.60). | 3.20 |
| 01-30-07 |  |  |
| JAW | Review Kahala's reply in United States District Court action and conference with NJV re same; review NJV memo and additional record re same. | 2.50 |
| NJV | Analyze cases cited by trustee (1.30); research allowance of default interest issues under 506(b) (1.90); draft memorandum responding to trustee's reply arguments in preparation for oral argument (3.10); conference with JAW re reply issues (.20). | 6.50 |
| 01-31-07 |  |  |
| JAW | Review memorandum from NJV re reply to trustee; reply and conference with NJV re same. | 0.50 |
| NJV | Research bankruptcy redemption issues (1.30); research valuation and allowance of secured claim issue (.90); research distinction between sharing in distribution of estate and foreclosure on collateral and bankruptcy court claim allowance jurisdiction (2.10). | 4.30 |
| 02-02-07 |  |  |
| JAW | Review tentative rulings by Faris and Mollway; conference with NJV re same. | 0.50 |

WAGNER CHOI & EVERS

Kahala CCM Factors, LLC

Page: 4
02-05-07
ACCOUNT NO: 634-00
INVOICE NO: 10976

| | | | | |
|---|---|---|---|---|
| NJV | Review notice of tentative ruling (.40); e-mail tentative ruling to CCC and Smith (.10); e-mail to Cole and Smith re meeting (.10); e-mail from Smith re meeting (.10). | | 0.70 | |
| | SUB TOTAL | | 73.50 | $18,199.50 |

FEE SUMMARY:

| ATTORNEY | HOURS | RATE | TOTAL |
|---|---|---|---|
| James A. Wagner | 9.90 | $425.00 | $4,207.50 |
| Neil J. Verbrugge | 63.60 | $220.00 | $13,992.00 |

| | | |
|---|---|---|
| STATE TAX | | 857.56 |
| TOTAL FEES | | $19,057.06 |
| 01-31-07  WestLaw Research | | 435.52 |
| Postage | | 0.63 |
| TOTAL EXPENSES | | $436.15 |
| | | |
| **PREVIOUS BALANCE** | | $0.00 |
| **TOTAL CURRENT WORK** | | $19,493.21 |
| **TOTAL PAYMENTS** | | $0.00 |
| | | |
| **BALANCE DUE** | | $19,493.21 |