IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| KAHALA CCM FACTORS, LLC, ) | CIVIL NO. CV-02-00383 SOM/BMK |
| ) | (CONTRACT) |
| Plaintiff, ) | |
| ) | DECLARATION OF STEWART |
| vs. ) | PRESSMAN |
| ) | |
| HIRAM L. FONG, ALSO KNOWN AS ) | |
| HIRAM L. FONG, SR., et al. ) | |
| ) | |
| Defendants. ) | |
| ) | |

## DECLARATION OF STEWART PRESSMAN

STEWART PRESSMAN hereby declares that:

1. I am an attorney licensed to practice law in the State of Hawaii, and am a partner of the law firm of McCorriston Miller Mukai MacKinnon LLP, attorneys for Plaintiff Kahala CCM Factors, LLC ("Plaintiff").

2. I make this declaration upon my own personal knowledge and am competent to testify to all matters set forth herein, and submit the same in support of Plaintiff Kahala CCM Factors, LLC's Memorandum in Opposition to Defendant Finance Enterprises, Ltd.'s Motion to Compel Compliance with this Court's Order Dated February 22, 2007, Filed March 15, 2007 attached hereto and made a part hereof by reference.

3. On the afternoon of Thursday, March 8, 2007, I was contacted by Commissioner Jay Suemori concerning Finance Enterprises, Ltd.'s ("Finance Enterprises") exercise of its right of first refusal to acquire 1,092 shares of Finance Enterprises Common stock (the "Shares"), referenced as Lot 1 in this Court's February 22, 2007 "Order Granting in Part and Denying in Part Plaintiff Kahala CCM Factors, LLC's Motion for an Order Approving Report of Commissioner and Confirming the Sale of Collateral (1,963 Shares of Stock in Finance Enterprises, Ltd.) at Public Auction, Filed December 13, 2006."

4. Commissioner Suemori inquired if I knew of the whereabouts of the stock certificates representing the Shares, and I responded that I would have the files located and brought to my office for review. At that time I asked the Commissioner if he knew the certificate numbers comprising the certificates for the Shares to assist in our search efforts. He responded that he did not, and we commenced to locate the appropriate certificates.

5. Following my discussion with Commissioner Suemori, I telephoned Susan Tius, counsel to the Trustee for the Rodney L. Fong Bankruptcy Estate (the "Fong Estate") to ask if she knew the relevant stock certificate numbers for the certificate or certificates comprising the Shares. Ms. Tius informed me that she did not have that information immediately available.

6. During the course of my conversation with Ms. Tius, we discussed briefly the process we envisioned that would ensue for the distribution between Kahala CCM Factors, LLC ("Kahala CCM") and the Fong Estate of the exercise price to be paid by Finance Enterprises for the Shares. Ms. Tius and I agreed that we could stipulate that a portion of such proceeds constituting the allowed principal plus accrued interest (the "Undisputed Amount") as set forth in this Court's February 3, 2004 Plaintiff's Findings of Fact, Conclusions of Law, Order Granting Plaintiff's Motion for Summary Judgment Against Defendants Rodney Leong, Also Known As Rodney L. Fong and Patsy Nakano Fong, Also Known As Patsy N. Fong Filed On October 1, 2003" (the "Summary Judgment Motion") could be distributed by Commissioner Suemori immediately to Kahala CCM, with the balance to be held by Commissioner Suemori in abeyance pending the filing by Kahala CCM of a proper motion in support of its claim for attorneys' fees and enforcement costs as finally determined by the Court (the "Undetermined Amount").

7. Later during the afternoon of Thursday, March 8, 2007, I telephoned Commissioner Suemori to inform him that I had located the original stock certificates for the Shares. I also informed him at that time that I had some reservations about releasing the stock certificates to him without some procedural safeguards to ensure that we did not inadvertently release the possessory security

interest held by Kahala CCM by parting with the Shares without continuing Kahala CCM's first priority perfected security interest under the Uniform Commercial Code in the proceeds of the Shares.

    8.    I then suggested to Commissioner Suemori that it might be appropriate to convene a three party closing among Finance Enterprises, Kahala CCM, and the Commissioner to consummate the transfer of the Shares on the following terms:

    a.    Finance Enterprises would bring a cashier's check to the closing in the full amount of the purchase price of $1,152,333 (One Million One Hundred Fifty-Two Thousand Three Hundred and Thirty-Three Dollars) confirmed in the order for the sale of the Shares (the "Purchase Price");

    b.    Kahala CCM would bring the stock certificates representing the Shares to the closing;

    c.    Commissioner Suemori would indorse the stock certificates to Finance Enterprises and simultaneously would distribute to Kahala CCM at the closing the Undisputed Amount.

    d.    Commissioner Suemori would return to Kahala CCM at the closing the amount of $12,115.72 representing a deposit made by Kahala CCM in connection with the original auction bid held on November 1, 2006.

e.  Commissioner Suemori would hold, on behalf of Kahala CCM and the Fong Estate, the Undetermined Amount in a sum to be stipulated by the Fong Estate and Kahala CCM.

f.  Commissioner Suemori would hold the Undetermined Amount as proceeds under the Uniform Commercial Code subject to a continuing first priority perfected security interest in favor of Kahala CCM pending a final Court order as to the determination of Kahala CCM's right to receive its attorneys' fees and costs of enforcement, with the balance of the remaining Purchase Price proceeds going to the Fong Estate.

9.  Commissioner Suemori remarked that the proposed procedure seemed reasonable to protect the interests of the parties, but that he would be required to obtain concurrence from Sam Yee on behalf of Finance Enterprises.

10. During the course of my conversation with Commissioner Suemori it was brought to my attention that Finance Enterprises was requesting that a voting proxy granting shareholder voting rights to Finance Enterprises be included in the stock assignment instrument to transfer the Shares.  I remarked that I thought the Finance Enterprises request was inappropriate, and that Kahala CCM would support a transfer of the Shares by a standard form of stock assignment or, even more preferable, a simple indorsement on the reverse side of the share certificates to negotiate the transfer.  I communicated my view that the simple act of

transferring the Shares to effectuate a foreclosure order should not involve the adjudication of voting rights for an impending shareholders' meeting. I also questioned whether or not the existing Court orders would require the Commissioner to grant such a proxy, or even permit such a proxy grant absent a Court Order, but I never conditioned the release of the share certificates on this basis. I expressed to Commissioner Suemori that a separate court proceeding to determine voting rights would be the more appropriate course for Finance Enterprises' demands upon the Commissioner, and that eliminating Finance Enterprises' non-standard proxy language from an otherwise standard stock assignment instrument would be Kahala CCM's preference to facilitate the closing.

11. On Monday, March 12, 2007 and on Tuesday, March 13, 2007, I telephoned Commissioner Suemori to inquire about Mr. Yee's response to our proposal for a three party closing, as Kahala CCM is anxious to finally liquidate to cash its secured claim as soon as possible. I was unable to reach Commissioner Suemori at either of those times, and I left a message for him to return my calls as soon as he was available.

12. On the afternoon of Wednesday, March 14, 2007, I received a return telephone call from Commissioner Suemori informing me that Sam Yee on behalf of Finance Enterprises was not agreeable to our proposed procedures. I understood from Commissioner Suemori that Finance Enterprises had at least two objections

to our proposal for a three party closing: (1) Finance Enterprises intended to participate in the decision as to how and when the Undisputed Amount (and possibly the Undetermined Amount) would be distributed to Kahala CCM, and would not consent to an immediate distribution of the Undisputed Amount, and (2) Finance Enterprises insisted that the non-standard voting proxy language remain in the stock assignment form. Commissioner Suemori and I discussed the benefits of a three-way conference call among Mr. Yee, Commissioner Suemori, and myself to discuss the matter, but Commissioner Suemori and I agreed that it would be more appropriate for me to contact Mr. Yee directly. As my discussion with Commissioner Suemori was taking place after business hours, it was decided that I would speak with Mr. Yee the following day to attempt to resolve the situation.

13. After returning to the office shortly before noon on Thursday, March 15, 2007 from client meetings, and before having an opportunity to discuss the situation with Mr. Yee, Kahala CCM was served with the present Motion to Compel.

14. At no time did a representative of Finance Enterprises attempt to speak with a member of the McCorriston firm to discuss a rational method for exchanging the Shares and satisfying Kahala CCM's secured debt position in a manner that would protect Kahala CCM's continuing security interest in the proceeds of the Purchase Price.

15.     Attached hereto as Exhibit 1 is a true and correct copy of excerpted pages of Exhibit 3 (articles of incorporation of Finance Enterprises, Ltd.) that was attached to the Motion for a Temporary Restraining Order filed by NVC Limited Partnership on February 22, 2007 in this action.

I declare under penalty of perjury that the foregoing is true and correct. Executed at Honolulu, Hawaii this 16th day of March, 2006.

*[signature]*
STEWART PRESSMAN

56564/157883.1                                                8