IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KAHALA CCM FACTORS, LLC, | ) | CIVIL NO. CV-02-00383 SOM BMK |
| | ) | (Contract) |
| Plaintiff, | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| vs. | ) | MOTION; EXHIBITS "A" – "D" |
| | ) | |
| HIRAM L. FONG, ALSO KNOWN | ) | |
| AS HIRAM L. FONG, SR., ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM IN SUPPORT OF MOTION

### I.   INTRODUCTION

Defendant NVC, Ltd. ("NVC") and/or its counsel should be sanctioned under 28 U.S.C. § 1927 and this court's inherent powers for NVC's repeated willful and flagrant violations of the Rules of Civil Procedure and for forcing Finance Enterprises, Ltd. ("Finance Enterprises") to expend time and resources defending itself against unnecessary and duplicative litigation and in enforcing its rights against NVC's repeated violations. In addition, NVC and/or its counsel should also be liable for abuse of process in misusing the judicial process in order to harass management into buying NVC's stake in Finance Enterprises, Ltd.

As the court is surely well aware, the instant case has involved much contentious litigation among the various parties. While Finance Enterprises believes that the various parties should and must represent their respective rights vigorously and within the bounds of the law, it is clear that NVC has engaged in a pattern of harassment and oppressive conduct in derogation of Finance Enterprises' rights and otherwise designed to unduly prejudice Finance Enterprises.

## II. APPLICABLE LAW

### A. A Court Can Sanction A Party And/Or Its Counsel Under Three Principles: FRCP Rule 11, 28 USC § 1927 And The Court's Inherent Powers.

It is well-settled that a court has the power to sanction a party and/or its counsel for improper conduct under three distinct principles: (1) Rule 11 of the Federal Rules of Civil Procedure; (2) 28 USC § 1927 (hereinafter "§ 1927"); and (3) the court's inherent power. For purposes herein, although the conduct of Defendant NVC and/or its counsel was egregious enough to warrant Rule 11 sanctions, the expedited scheduling of the litigation made it difficult for Defendant Finance Enterprises to satisfy Rule 11's procedural requirements and therefore no sanctions are being sought under Rule 11.[1]

---

[1] Fed.R.Civ.P. Rule 11 provides, in pertinent part:

(b) Representations to Court. By presenting to the court (whether by signing, filing, submitting, or later advocating) a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation...

**B.     The Standard For Sanctions Under The Court's Inherent Powers.**

The authority for a court to sanction under its inherent power lies in case law, specifically, Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980) and Chambers v. NASCO, Inc., 501 U.S. 32 (1991).

In Roadway Express, Inc. v. Piper, 447 U.S. 752 (1980) the U.S. Supreme Court "delivered the definitive summary of the bases on which a federal court may levy sanctions under its inherent power. The Court reiterated the federal courts' inherent power to levy sanctions, including attorneys' fees, for 'willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . .'" Fink v. Gomez, 239 F.3d 989, 992 (9th Cir. 2001) (quoting Roadway Express, Inc. at 766). Courts "certainly may assess [sanctions] against counsel who willfully abuse judicial processes." Id.

The U.S. Supreme Court reaffirmed the Roadway doctrine in Chambers v. NASCO, Inc., 501 U.S. 32 (1991). "On the one hand, the inherent power 'extends to a full range of litigation abuses.' On the other, the litigant must have 'engaged in bad faith or willful disobedience of a court's order.'" Fink at 992 (quoting Chambers at 46-47). "In Chambers, the Court left no question that a court may levy fee-based sanctions when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons, delaying or disrupting litigation, or has taken actions in the litigation for an improper purpose." Fink at 992.

3

Thus, it is well-settled under the foregoing cases that a court may impose sanctions under the inherent power doctrine upon a showing of bad faith. In Fink v. Gomez, 239 F.3d 989 (9th Cir. 2001) and B.K.B. v. Maui Police Dep't., 276 F.3d 1091 (9th Cir. 2002), the Ninth Circuit provided a clear and concise analysis to what conduct constitutes bad faith for purposes of invoking sanctions under a court's inherent power doctrine.

In Fink, Plaintiff David Fink ("Fink") was involved in an altercation in 1993 with several prison guards while incarcerated in a California prison. 239 F.3d 989 (9th Cir. 2001). The altercation prompted Fink to file two lawsuits: the first was filed in 1994 against the guards for violation of his civil rights, and the second, a petition for habeas corpus, was filed in 1996. During the habeas corpus proceedings, the attorney representing the defense in the civil rights case made misstatements of law and fact to the judge. The court *sua sponte* issued an order to show cause why the defense counsel should not be sanctioned, but ultimately decided not to impose sanctions.

Fink appealed the district court's decision, claiming that the district court abused its discretion by declining to impose sanctions. The Ninth Circuit held that the district court "misapprehended the scope of its inherent authority" when it declined to impose sanctions under its inherent power notwithstanding that an attorney made reckless misstatements of law and fact. Fink at 993. Sanctions are available if the court finds bad faith or such conduct tantamount to bad faith.

4

Id. at 994.

According to the Ninth Circuit, there may be a finding of bad faith even if the conduct in question does not rise to the level of being frivolous: "For purposes of imposing sanctions under the inherent power of the court, a finding of bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees.'" Id at 992 (quoting In re Itel Sec. Litig. v. Itel, 791 F.2d 672 (9th Cir. 1986)).

While recklessness alone is insufficient to warrant sanctions, in Fink, the Ninth Circuit held that recklessness, coupled with an improper purpose is sanctionable: "Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose. Therefore . . . an attorney's reckless misstatements of law and fact, when coupled with an improper purpose, such as an attempt to influence or manipulate proceedings in one case in order to gain tactical advantage in another case, are sanctionable under a court's inherent power." Id. at 994.

In B.K.B. v. Maui Police Dep't, 276 F.3d 1091 (9th Cir. 2002), the Ninth Circuit held that sanctions are warranted even though there is no specific finding of bad faith, if the conduct in question is "tantamount to bad faith". In

B.K.B., a female employee of the Maui Police Department brought suit against the Maui Police Department and the County of Maui for "federal and state violations of race and sex discrimination laws (including racial and sexual harassment), unlawful retaliation, violations of the state whistle-blower statute, and infliction of emotional distress." Id. at 1096. .At trial, the defense counsel put a witness on the stand to provide testimony as to the plaintiff's sexual behavior in violation of Rule 412 of the Federal Rules of Evidence. The trial court found that the conduct of defense counsel for the County of Maui was deserving of sanctions and imposed $5,000 in sanctions under § 1927 for attorneys' fees, and another $5,000 under the court's inherent powers to compensate Plaintiff for the emotional damage caused by the improper testimony. Id. at 1106. According to the district court, the County was not entirely forthcoming in the way that the witness' testimony was presented to the court, and further concluded "that defense counsel had been more than reckless with regard to the requirements of the Rule [412]." Id. at 1107. Instead, counsel had demonstrated "knowledge of the rule and the applicable law and recklessness in the face of such undeniable knowledge." Id. at 1107.

On appeal, the County argued that "absent a showing of bad faith, sanctions under the court's inherent power also cannot be justified, much less for compensatory damages to the plaintiff." Id. at 1106. However, the Ninth Circuit upheld the imposition of sanctions because "[r]egardless of whether defense counsel's behavior constituted bad faith per se, we readily find that counsel's

6

reckless and knowing conduct in this case was tantamount to bad faith and therefore sanctionable under the court's inherent power." Id. at 1108.

On the issue of compensatory damages, the County argued on appeal that sanctions for compensatory damages are "unprecedented and beyond the scope of the court's inherent power." Id. However, the Ninth Circuit cited Chambers, wherein the U.S. Supreme Court "delineated a broad range of situations for which a variety of sanctions were deemed appropriate, and noted that even outright dismissal of a lawsuit lies within the court's inherent power. The Court therefore reasoned that the less severe sanction of an assessment of attorneys fees was well within the court's authority as well." Id. (internal quotations omitted). "Similar logic applies here, particularly given that none of the other federal rules or statutes govern the situation." Id.

## C.    The Standard For Sanctions Under 28 USC § 1927.

The third method under which a court may sanction for improper conduct is 28 USC § 1927, which provides that:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

In B.K.B., the Court was asked to determine whether recklessness alone justified the district court's imposition of $5,000 in sanctions under § 1927.

7

The County argued that mere recklessness was insufficient to impose sanctions, and that recklessness plus knowledge adds up to nothing more than recklessness, since all attorneys are presumed to know the law. B.K.B. at 1106.

However, the Ninth Circuit ruled that while bad faith is required for sanctions imposed under the court's inherent power, recklessness alone is sufficient for sanctions to be imposed under § 1927. Id. at 1107. (Emphasis added). In particular, the B.K.B. Court stated that: "We conclude that the district court's finding of recklessness plus knowledge was sufficient to justify the imposition of § 1927 sanctions." Id.

## III.   ARGUMENT

### A.    NVC's Duplicate Motions For Temporary Restraining Orders Evidence Bad Faith And/Or Recklessness.

On February 22, 2007, this Court issued an Order Granting In Part and Denying In Part Plaintiff Kahala CCM Factors, LLC's Motion For An Order Approving Report Of Commissioner And Confirming The Sale Of Collateral (1963 Shares Of Stock In Finance Enterprises, Ltd.) At Public Auction, Filed December 13, 2006 (the "Order to Confirm").  Pursuant thereto, this Court held, among other things, that Finance Enterprises was entitled to exercise a right of first refusal to purchase its own shares, in accordance with its Articles of Incorporation. NVC and other minority shareholders had filed pleadings seeking to prevent Finance Enterprises from exercising such right of first refusal.  However, this

Court rejected such arguments as being nothing more than bald assertions.

Separately NVC had initiated an action against Finance Enterprises entitled <u>NVC Limited Partnership v. Finance Enterprises, Ltd.</u>, S.P. No. 07-1-0047 (the "State Court Action"). The purported purpose of the State Court Action was the scheduling of the date, time, and quorum requirements of a special shareholder meeting.

On February 22, 2007 – the very same day that this Court issued the Order to Confirm – NVC filed a Motion For Temporary Restraining Order in the State Court Action, seeking to prevent Finance Enterprises from exercising its right of first refusal. After a hearing on February 22, 2007, the state court motion for TRO was denied by Judge Eden Elizabeth Hifo.

A <u>second</u> motion for temporary restraining order ("TRO") was filed <u>herein</u> that very same day – February 22, 2007. A hearing was scheduled for the next day – February 23, 2007. Based on Judge Hifo's denial of the motion for TRO in the State Court Action, Finance Enterprises' counsel contacted NVC's counsel and requested that she withdraw the substantially identical motion for TRO filed herein. <u>See</u> correspondence from Reuben S.F. Wong, Esq. to Judith Ann Pavey, Esq., dated February 23, 2007, attached hereto as Exhibit "A".

Pavey refused to withdraw the federal court motion for TRO, but nevertheless, the motion was <u>denied</u> by this honorable Court, *sua sponte*, without the necessity of a hearing.

1.    NVC Seeks To Overturn This Court's Order Dated February
      22, 2007 By Filing A TRO In State Court.

NVC's filing of a motion for TRO in the State Court Action was reckless and/or in bad faith, because the issue of whether Finance Enterprises was entitled to exercise its right of first refusal had already been decided by this Court (and the Bankruptcy Court in certain related bankruptcy proceedings).[2] NVC was essentially seeking to overturn this Court's decision by filing its motion for TRO in State Court, hoping that the State Court, being unaware of the proceedings herein and the related Finance cases, would effectively reverse this Court's Order to Confirm by restraining Finance Enterprises from exercising its right of first refusal.

If NVC was not happy with this Court's ruling, its proper remedy was to file either a motion for reconsideration, a motion for a new hearing, or a Fed.R.Civ.P. Rule 60(b) motion for relief from order. However, to file a motion for TRO in a different case and before a different court is clearly a bad faith attempt to engage in "after-the-fact" forum shopping. Such action cannot be characterized as anything other than an utter abuse of the judicial process. NVC filed its motion for TRO in the State Court Action knowing full well that this Court had already recognized the validity of Finance Enterprises' right of first refusal.

---

[2] NVC's duplicative motions for TRO filed herein and in the State Court Action sought to enjoin Finance Enterprises from exercising its right of first refusal in the following cases: (1) In re Hiram Leong Fong and Ellyn Lo Fong, Case No. 03-00674, U.S. Bankruptcy Court, District of Hawaii; (2) In re Rodney Leong Fong, et.al., Case No. 05-04104, U.S. Bankruptcy Court, District of Hawaii; (3) NVC Limited Partnership, etc. v. Finance Enterprises, Ltd. etc., S.P. No. 07-1-0047 (EEH); and (4) Finance Enterprises, Ltd. v. Joel N. Pahk, et.al., Civ. No. 07-1-0201-02 (VSM) (collectively the "Finance cases").

Its action was more than merely reckless – it was clearly a willful and manipulative attempt to circumvent this Court's Order to Confirm. Had NVC prevailed in its motion for TRO in the State Court Action, Finance Enterprises would have been enjoined from exercising a right that had already been recognized as being valid by this Court, which would have been a total miscarriage of justice. Based on the foregoing, NVC's filing of the motion for TRO in the State Court Action was clearly sanctionable behavior under the bad faith standard that applies when the court's inherent power is invoked; at a minimum, such conduct meets the reckless standard applicable under § 1927.

> 2.    NVC Files A Second Motion For TRO, Seeking To Reverse Its Failure In State Court And Once Again Overturn This Court's Order To Confirm.

After NVC's motion for TRO in the State Court Action was denied, counsel for Finance Enterprises requested that NVC withdraw the substantially identical motion filed herein. However, NVC's counsel, Judith Pavey, refused. Given the outcome of the proceeding in the State Court Action, and given this Court's Order to Confirm, NVC's refusal was manifestly reckless, and clearly done in bad faith. Once again, NVC was attempting to improperly manipulate the judicial process by engaging in "after-the-fact" forum shopping. However, this time, NVC wanted this Court to sit as an appellate court in review of the State Court's ruling, rather than the other way around. In denying the motion for TRO filed herein, this Court noted in its *Order Denying Defendant NVC Limited*

11

*Partnership's Motion for Temporary Restraining Order*, filed February 23, 2007.

(*"Order Denying TRO"*):

> The court takes judicial notice of Judge Hifo's denial of the substantively identical state-court motion for a temporary restraining order. The court questions the appropriateness of NVC's filing of a substantively identical motion before state and federal courts. However, because this matter is being decided on an expedited basis, the court declines to determine whether the state-court denial of the motion should affect the present motion before the court.
> See *Order Denying Defendant NVC Limited Partnership's Motion for Temporary Restraining Order*, filed February 23, 2007, attached hereto as Exhibit "B".

NVC's filing of duplicative motions herein and in the State Court Action meets both the bad faith and reckless standards required for sanctions under the court's inherent power § 1927. NVC knew that this Court had already recognized the validity of Finance Enterprises' right of first refusal, but recklessly and knowingly sought to circumvent this Court's Order to Confirm by filing for relief in a separate forum. After the February 22, 2007 hearing, NVC also knew that the State Court had denied its first motion for TRO. Its refusal to withdraw the second motion for TRO was clearly aimed at compelling Finance Enterprises to incur additional unnecessary attorneys' fees in opposing such motion. Such motive equally improper as it was transparent.

## B.    NVC Abuses The Discovery Rules In Order To Harass, Intimidate, and Prejudice Finance Enterprises.

NVC has engaged in a pattern of harassment and abusive tactics that extend beyond the improper conduct described above. On Friday, February 23,

2007 – the same day that this Court was scheduled to hear NVC's second motion for TRO, NVC filed a Notice of Taking Deposition in the State Court Action regarding Finance Enterprises Director James Wright to be conducted on Monday, February 26, 2007. See Notice of Taking Deposition Upon Oral Examination issued to James H. Wright, Esq., filed February 23, 2007, attached hereto as Exhibit "C". Haw.R.Civ.P. Rule 30(b)(1) requires that a party desiring to take a deposition shall give "reasonable notice" in writing to every other party to the action.

In Sanders v. Point After, Inc., 2 Haw.App. 65, 626 P.2d 193 (App. 1981), a Hawaii case directly on point with the instant case, the Intermediate Court of Appeals (hereinafter "ICA") held that a Notice of Taking Deposition mailed the day before depositions were to be taken did not constitute reasonable notice of examination within the meaning of Haw.R.Civ.P. Rule 30(b)(1) (a rule identical to its federal counterpart), and such depositions were thus correctly denied admission into evidence. See also Hogan v. Beckel, 783 S.W.2d 307 (Tex.App. 1989) (tort defendant's late Thursday afternoon notice for Monday morning deposition was not reasonable, and thus plaintiff's failure to appear could not be characterized as discovery abuse, absent showing of justifiable explanation for rush to depose or for defendant's deliberate refusal to respond to plaintiff's request for postponement); Bogan v. Kreski, 546 So.2d 1132 (Fla.App. 1989) (plaintiffs' notice of deposition, which was mailed the day before deposition was scheduled and which could not

have been received before day of deposition, did not constitute "reasonable notice").

NVC clearly failed to abide by the Rule 30(b)(1) requirements by failing to provide "reasonable" time to respond. As noted in Sanders, one day's notice of a deposition to the party being deposed is clearly inadequate compliance with the rules. Here, NVC only provided one business day's notice of the Subpoena Duces Tecum, noticing James Wright's deposition on Friday, February 23, 2007, and seeking a response on Monday, February 26, 2007, which is clearly insufficient notice under the rules. Furthermore, NVC made no showing of necessity or any sort of justifiable explanation for the truncated time for notice and lacking any evidence to the contrary, it must be assumed that NVC's abbreviated notice was for no reason other than to prejudice Finance Enterprises by not allowing the company adequate time in which to review the documents sought or to assert any privilege against disclosure.

Further compounding its disregard for the rules of civil procedure, NVC failed to attach to the subpoena a designation of the materials that it sought from Finance Enterprises Director James Wright. See Notice of Taking Deposition Upon Oral Examination issued to James H. Wright, Esq., filed February 23, 2007, attached hereto as Exhibit "C". Haw.R.Civ.P. Rule 30(b)(1) further requires that "if a subpoena duces tecum is to be served on the person to be examined, the designation of the materials to be produced as set forth in the subpoena shall be

14

attached to, or included in, the notice." Haw.R.Civ.P. Rule 30(b)(1) (emphasis added). At approximately 4:30 p.m. on Friday, February 23, 2007, counsel for Finance Enterprises was informed that NVC's counsel had served a Subpoena Duces Tecum upon Finance Enterprises Director James Wright, seeking the production of documents at the time of his deposition on Monday, February 26, 2007 at 2:00 p.m.

However, there was no subpoena or designation of materials to be produced attached to NVC's Notice of Taking Deposition regarding James Wright, contrary to the express language of Rule 30(b)(1). Id.

NVC failed to give the usual thirty-day period in which to respond to the subpoena and further failed to provide any rationale for the highly-abbreviated one-day response period. There was simply no showing of necessity or any allegations of prejudice that would result from providing the standard thirty-day period. In addition, the subpoena was highly irregular. Under standard motions and discovery practice, the materials requested of non-party Director James Wright should more properly have been sent to the company as a Request for Production of Documents. The discovery request sought the production of materials from Director James Wright that were originally generated by the company in the conduct of company business; i.e., minutes of meetings, meeting agendas, reports, and the like.

The omission of the subpoena designation was not inadvertent, given

that NVC's counsel had caused to be issued at least 6 (six) other subpoenas to Finance Enterprises directors and officers, all of which contained the required designations. For a representative example, see Subpoena Duces Tecum issued to Patsy Chun, and filed February 23, 2007, attached hereto as Exhibit "D".

Given the extensive number of years that NVC's counsel has practiced in the state of Hawaii (licensed since 1978), her failure to comply with the Rules of Civil Procedure cannot be attributed to a lack of experience. But more significant than the impropriety of NVC's discovery tactics is the pattern of misconduct that emerges when NVC's actions are considered as a whole. The filing of substantially identical motions for TRO – one right after the other, in different cases and in different forums – and in each case, to circumvent this Court's prior ruling; the improper discovery tactics – all manipulatively filed at the eleventh hour to discourage and/or minimize opposition from Finance Enterprises; these actions, when considered in the aggregate, reveal a pattern of abusive behavior designed to manipulate the judicial process in order to obtain improper advantage. Such conduct clearly rises to the level of bad faith and/or recklessness, such that sanctions should be imposed against NVC and/or its counsel.

C.    **NVC Should Be Sanctioned For Abuse Of Process.**

NVC and its counsel have misused discovery procedures and other rules of civil procedure and otherwise engaged in questionable litigation tactics to harass, inconvenience, and prejudice Finance Enterprises in the rightful exercise of its management powers and in derogation of Finance's right of first refusal to Finance's own shares. (Emphasis added).

In Hawaii, the elements of a tort of abuse of process are: (1) an ulterior purpose; and (2) a willful act in the use of the process which is not proper in the regular conduct of the proceeding." Chung v. McCabe Hamilton & Renny Co., Ltd., 109 Haw. 520, 529 (2006). See Pourny v. Maui Police Dept., County of Maui, 127 F.Supp. 2d 1129 (D.Haw. 2000). "Liability for abuse of process is imposed when the putative tortfeasor uses legal process 'primarily' for an ulterior motive." Id. (citing Restatement (Second) of Torts § 682 (1977) (hereinafter "Restatement"). See also 1 AmJur Abuse of Process § 12 ("[i]n addition to prima facie proof of misuse of discovery, there must additionally be an allegation of an ulterior purpose and an act in furtherance of such purpose for an action for abuse of process to lie").

In particular, an action for abuse of process may lie for the misuse of discovery or deposition procedures such as the noticing of depositions and various motions to compel production. See 1 AmJur. 2d Abuse of Process at § 12; Thornton v. Rhoden, 245 Cal.App.2d 80, 53 Cal. Reprt. 706 (Cal. App. 1966)

(stating that although the giving of a notice that a deposition will be taken is not a "process" in the strictest sense of the word, in a proper case, an abuse of powers which a litigant derives from the taking of a deposition on proper notice can give such notice the status of "process" for the purpose of the tort of abuse of process); Nienstedt v. Wetzel, 651 P.2d 876 (Az. App. 1982) (liability for abuse of process was properly found where there was evidence that the defendant's use of notice of depositions and motions to compel production was for the ulterior, collateral and primary purpose of subjecting his adversaries to excessive litigation expenses).

NVC and its counsel's repeated efforts to frustrate Finance Enterprises' right of first refusal fulfills the "ulterior motive" element of the tort of abuse of process. This "ulterior motive" underlies many if not all of NVC's actions or failures to act in the aforementioned Finance cases. Essentially, since NVC could not lawfully prohibit Finance Enterprises from exercising its right of first refusal to purchase its own shares in a "buy-out". NVC resorted to a strategy of harassment and intimidation, as evidenced by the filing of multiple TRO motions in multiple lawsuits, and reckless violations of the discovery rules.

## IV. CONCLUSION

NVC and its counsel have misused discovery procedures and other rules of civil procedure and otherwise engaged in questionable litigation tactics to harass, inconvenience, and prejudice Finance Enterprises in the rightful exercise of its management powers and in derogation of Finance's right of first refusal to

18

Finance's <u>own shares</u>. (Emphasis added).

Finance has incurred considerable attorneys fees and costs in preparing appropriate responses to NVC's numerous court filings, including the inappropriate motions for TRO in both state circuit court and this Court, and the inappropriate Subpoena Duces Tecum to Finance Enterprises' Director James Wright. These attorneys fees and related costs are amounts which Finance Enterprises would otherwise not have expended absent NVC's actions. Should this honorable Court find an award of fees and costs appropriate, Movant requests leave of the court to file a supplemental declaration at a subsequent time.

For all the foregoing reasons, this Court should sanction Defendant NVC and/or its counsel, and award Defendant Finance Enterprises its costs, reasonable attorneys' fees, compensatory damages, and such other and further relief as the court deems necessary.

DATED: Honolulu, Hawaii, ___MAR 2 3 2007_____

Respectfully submitted,

_____

REUBEN S.F. WONG
DELWYN H.W. WONG
COLETTE L. HONDA
Attorneys for Defendant
  Finance Enterprises, Ltd.

## CERTIFICATE OF COMPLIANCE

I certify that pursuant to Local Rule 7.5(e), the attached Memorandum in Support of Defendant Finance Enterprises, Ltd.'s Motion for Sanctions is proportionately spaced, has a typeface of 14 points or more and contains 4,424 words.

Dated: March 23, 2007

Delwyn H.W. Wong